793 P.2d 279

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Kim HADDENHAM,
Defendant–Appellant.**

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Ben BENTON, Defendant–Appellant.**

**Nos. 11334, 11357.**

Court of Appeals of New Mexico.

April 19, 1990.

Certiorari Denied May 22, May 23,
and May 30, 1990.

Hal Stratton, Atty. Gen., Patricia Gandert, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Jacquelyn Robins, Chief Public Defender, Sheila Lewis, Asst. Appellate Defender, Santa Fe, for defendant-appellant Kim Haddenham.

Jacquelyn Robins, Chief Public Defender, Jerry Todd Wertheim, Asst. Appellate Defender, Santa Fe, for defendant-appellant Ben Benton.

## OPINION

DONNELLY, Judge.

These consolidated cases involve the common question of whether it is legally permissible for the state to present evidence of the same felony to prove an essential element of the crime of felon in possession of a firearm contrary to NMSA 1978, Section 30–7–16 (Repl.Pamp.1984), and to rely upon this same evidence for purposes of enhancing defendants' sentences under the habitual offender criminal statute, NMSA 1978, Section 31–18–17 (Repl.Pamp.1987).

Defendants were convicted in separate cases of the charge of felon in possession of a firearm contrary to Section 30–7–16. In each case, defendants were also sentenced as habitual offenders in accordance with Section 31–18–17.

In sentencing Haddenham, the court determined that he had been convicted of felonies on two prior occasions: offenses of

conspiracy to commit robbery in Colorado on December 13, 1973, and the unlawful distribution of a controlled substance, to wit: methamphetamine; and the offense of conspiracy in Eddy County, New Mexico, on August 4, 1983. Based upon the court's finding that Haddenham had been convicted of felonies on two prior occasions, his sentence was enhanced by four years. *See* § 31–18–17(C). The Colorado conspiracy conviction was the one used to prove Haddenham was a felon, an element of the crime of felon in possession of a firearm. *See* § 30–7–16; SCRA 1986, 14–701.

In imposing the sentence in Benton's case, the court found that he had three prior convictions, aggravated assault, battery on a peace officer, and criminal sexual penetration, and his sentence was enhanced by eight years. *See* § 31–18–17(D). Proof of Benton's conviction of criminal sexual penetration was also used to prove he was a felon in possession of a firearm.

Each defendant contends it was improper for the courts below to use the same felony both to prove an essential element of the felon in possession of a firearm charge and also to enhance his sentence. Although each defendant raises this issue in different ways and makes different arguments, we consolidated the cases on our own motion to answer the central issue concerning whether the state may properly enhance a defendant's sentence on the basis of the same felony that was also used to prove that the defendant was a felon in possession of a firearm.

In addition to the common issue raised in both cases, Benton alleges: (1) he was subject to an unlawful search and seizure; (2) there was tampering with the record of his preliminary hearing warranting a reversal of the conviction; and (3) he was denied effective assistance of counsel. Haddenham also alleges: (1) he received ineffective assistance of counsel; (2) that federal firearms laws preempt Section 30–7–16; (3) there was insufficient evidence to convict him; (4) the court should have instructed the jury in accordance with his definition of antique firearms; (5) the 1973 conviction was so remote in time as to preclude its use

for enhancement of his sentence; and (6) that the errors in the case violated his rights to confront and cross-examine the witnesses against him and constitute cruel and unusual punishment. We address the common issue first and then address defendants' other claims seriatim. We hold it is not permissible on these facts for the state to make "double use" of the same felony.

## DOUBLE USE OF PRIOR FELONY

Haddenham contends that use of the same felony to prove the principal charge of felon in possession of a firearm and also to enhance his punishment under the habitual offender criminal statute violates both the state and federal prohibitions against double jeopardy. Haddenham relies primarily on cases from other jurisdictions. Similarly, Benton raises issues of double jeopardy and argues that applying the general-specific rule of statutory construction to the relevant statutes indicates that it was not the legislative intent to allow use of the same felony to prove the principal charge of felon in possession of a firearm and also to enhance the punishment.

■ Benton raised the issue of double jeopardy both in the trial court and in his docketing statement; Haddenham has asserted this issue only on appeal. Since double jeopardy may be raised at any stage of a criminal proceeding, it may properly be raised for the first time on appeal. *See* NMSA 1978, § 30–1–10 (Repl.Pamp.1984). In *Albernaz v. United States*, 450 U.S. 333, 344, 101 S.Ct. 1137, 1145, 67 L.Ed.2d 275 (1981), the Court said, "the question of what punishments are constitutionally permissible is not different from the question of what punishments the Legislative Branch intended to be imposed. Where Congress intended * * * to impose multiple punishments, imposition of such sentences does not violate the Constitution." (Footnote omitted.) *See also State v. Ellenberger*, 96 N.M. 287, 629 P.2d 1216 (1981). To the same effect, this court held that the double jeopardy argument made in *State v. Keith*, 102 N.M. 462, 463, 697 P.2d 145, 146 (Ct.App.1985), precluded the multiple use of the same facts to prove a predicate offense and enhance a sentence where

there is an absence of any showing that the legislature intended to permit such double usage. We recently reaffirmed these principles in *State v. Tsethlikai*, 109 N.M. 371, 785 P.2d 282 (Ct.App.1989). For these reasons we do not separate each defendant's argument concerning this issue, but consider them jointly.

■ Section 30–7–16, as it read prior to the 1987 amendment, provided in pertinent part:

A. It is unlawful for a felon to receive, transport or possess any firearm in this state.

B. Any person violating the provisions of this section shall be guilty of a misdemeanor and shall be sentenced in accordance with the provisions of the Criminal Sentencing Act * * *.

C. * * * *

(1) "felon" means a person who has been convicted in the preceding ten years by a court of the United States or of any state or political subdivision thereof, to a sentence of death or one or more years imprisonment and has not been pardoned of the conviction by the appropriate authority[.] [Citations omitted.]

Section 30–7–16 was amended by 1987 N.M.Laws, ch. 202, Section 1, to increase the penalty for violation of the act from a misdemeanor to a fourth degree felony, and to broaden the offense to also make unlawful the possession of a destructive device by a felon.

The habitual offender statute, Section 31–18–17(B) and (C), directs that "[a]ny person convicted of a noncapital felony in this state whether within the Criminal Code or the Controlled Substances Act or not who has incurred [one or more] prior felony convictions which were parts of separate transactions or occurrences is a habitual offender and his basic sentence shall be increased" by a specific period of time, depending upon the number of the defendant's prior felony convictions.

When the legislature increased the penalty for the offense of felon in possession without changing the reference within the felon in possession statute to the Criminal Sentencing Act, it created a situation in which a single prior felony might be used twice, once to make conduct not otherwise criminal a felony and then to make the felon a habitual offender. Prior to 1987, the crime of felon in possession could be punished in accordance with the Criminal Sentencing Act without raising the question of whether the habitual offender criminal statute also applied. After 1987, the crime of felon in possession could not be committed without also becoming a felon with a prior felony. Examination of the two statutes fails to indicate any specific legislative intent to permit a "double use" of the same felony under these circumstances.

The general habitual offender criminal statute provides for enhancement of the sentence for any felony. The amount of enhancement depends on the number of prior felonies, but one is sufficient. On the facts of this case, both the felon in possession statute and the general habitual offender criminal statute provide for an enhanced sentence when a felon has been convicted of possession of a firearm. With respect to the felony that makes possession criminal, the felon in possession statute is specifically, rather than generally, applicable.

An analysis of the felon in possession statute, Section 30–7–16, and the provisions of the general habitual offender criminal statute, Section 31–18–17, indicates that the two statutes have a common purpose, namely, to deter criminal conduct by placing convicted felons on notice that they will be subjected to enhanced sentences for the commission of subsequent offenses. *See State v. Linam*, 93 N.M. 307, 600 P.2d 253, *cert. denied*, 444 U.S. 846, 100 S.Ct. 91, 62 L.Ed.2d 59 (1979); *State v. Lujan*, 76 N.M. 111, 412 P.2d 405 (1966); *State v. Keith.* The felon in possession statute provides for an enhanced punishment in order to keep firearms out of the hands of persons previously convicted and to deter recidivism. On the facts of these cases, where the state seeks to make "double use" of the same offense, we conclude that the felon in possession statute, Section 30–7–16, is a specific statutory offense proscribing the posses-

sion of firearms by a felon, which statute governs over the provisions of the general habitual offender statute, Section 31–18–17. *State v. Keith.* The legislature in fixing the penalty for the offense of felon in possession has also taken into consideration the fact of defendant's prior felony conviction.

Other courts that have considered similar issues have reached diverse results. However, a majority of jurisdictions have held that a prior conviction which is used as the predicate to establish a defendant's status as a felon in a prosecution for unlawful possession of a weapon, cannot also be used to enhance his punishment under a habitual offender criminal statute. *State v. Smith,* 12 Ariz.App. 272, 469 P.2d 838 (1970); *Lawson v. State,* 295 Ark. 37, 746 S.W.2d 544 (1988); *Bigelow v. United States,* 498 A.2d 210 (D.C.App.1985); *People v. Gresham,* 104 Ill.App.3d 81, 59 Ill. Dec. 868, 432 N.E.2d 654 (1982); *State v. Ware,* 201 Kan. 563, 442 P.2d 9 (1968); *State v. Sanders,* 337 So.2d 1131 (La.1976); *State v. Dowdy,* 774 S.W.2d 504 (Mo.Ct. App.1989); *Garcia v. State,* 169 Tex.Crim. 487, 335 S.W.2d 381 (1960). *Contra People v. Gaines,* 112 Cal.App.3d 508, 169 Cal. Rptr. 381 (1980); *People v. Bergstrom,* 190 Colo. 105, 544 P.2d 396 (1975); *Woods v. State,* 471 N.E.2d 691 (Ind.1984); *Hollander v. Warden, Nev. State Prison,* 86 Nev. 369, 468 P.2d 990 (1970); *Bailleaux v. Gladden,* 230 Or. 606, 370 P.2d 722, *cert. denied,* 371 U.S. 848, 83 S.Ct. 86, 9 L.Ed.2d 84 (1962). *See generally* Annotation, *Propriety of Using Single Prior Felony Conviction as Basis for Offense of Possessing Weapon by Convicted Felon and to Enhance Sentence,* 37 A.L.R.4th 1168 (1985).

Although the statutes at issue in the cases cited above differ in language, and the rationale employed by the courts varies, we find that the weight of authority favors defendants' position, and there is an absence of any clear showing of a legislative intent to allow the double use of the same facts to both convict defendant of the offense of felon in possession and to enhance his sentence under the habitual offender criminal statute.

The state, citing *State v. DeMary,* 99 N.M. 177, 655 P.2d 1021 (1982) and *State v. Jacobs,* 102 N.M. 801, 701 P.2d 400 (Ct.App. 1985), argues that joint application of the sentencing provisions of the habitual criminal act and felon in possession statute, is not precluded, nor do such sentences offend double jeopardy protections, because the legislature intended to permit the same facts to be utilized under both statutes. We disagree. We discern no clear legislative intent to permit the same facts used to prove the offense of felon in possession to also be used to enhance defendant's sentence under the habitual offender criminal statute. Both the felon in possession statute and the habitual offender criminal statute are designed to prevent recidivism; hence, both statutes have the similar purpose of deterring repeat criminal conduct by subjecting recidivists to enhanced criminal penalties. *See State v. Linam; State v. Lujan.*

In *Lawson,* the Arkansas Supreme Court considered an analogous issue. There, the court considered whether a DWI enhancement statute could be coupled with the general habitual criminal statute for sentencing purposes. The court held:

> In surveying other jurisdictions, we find the weight of authority to be against the stacking of enhancement statutes. *Goodloe v. Parratt,* 605 F.2d 1041 (8th Cir.1979); *State v. Chapman,* 205 Neb. 368, 287 N.W.2d 697 (1980); *State of New Mexico v. Keith,* 102 N.M. 462, 697 P.2d 145 (Ct.App.1985). Of those states that have considered the question, a clear majority have not allowed stacking of enhancement statutes in this case.

*Id.* 295 Ark. at 40, 746 S.W.2d at 545.

As observed in *Heady v. Commonwealth,* 597 S.W.2d 613 (Ky.1980), *modified, Commonwealth v. Grimes,* 698 S.W.2d 836 (Ky.1985), the common thread that runs through many of the cases that have considered this question is to disallow the double use of enhanced sentences under different statutes, on the basis that the specific statute is deemed to control over a more general statute. This principle is in

accord with our decisions in *Linam* and *Keith. See also State v. Dowdy.*

As noted in *Keith,* doubts about the construction of criminal statutes are resolved in favor of the rule of lenity. Where the legislative intent is to permit the use of the same facts to impose an enhanced sentence, the legislation must clearly so indicate. *Id. See also State v. Ellenberger; People v. Hopkins,* 167 Cal.App.3d 110, 212 Cal.Rptr. 888 (1985).

We conclude, under the facts before us, that it is impermissible to sentence both defendants as habitual offenders when the same facts were relied upon to convict defendants of the underlying offense of felon in possession of a firearm.

### BENTON'S ISSUES

#### (A) Search Issue

Benton contends he was the subject of an unlawful patdown search, although conceding that he was initially properly stopped. Because resolution of this issue depends on the facts available to the officer at the time he took the contested action, we review those facts. *See State v. Cobbs,* 103 N.M. 623, 711 P.2d 900 (Ct.App.1985). The officer responded to a call of a robbery in progress at a convenience store. Upon arriving at the store, the officer learned from the clerk that there had been no robbery. However, the clerk was very emotionally upset by what had happened. An intoxicated man had come into the store and tried to buy merchandise for which he did not have enough money. When the clerk told him that he did not have enough money to buy what he wanted, he cursed her. The clerk gave the officer a description of the man and the direction he took when he departed. The officer saw the man walking and stopped him. The officer knew the man and knew his prior record, including past arrests for disturbances. When the officer saw Benton, he was staggering so much that the officer could have picked him up for detoxification for his own safety even if there was no incident to investigate from the convenience store. The incident the officer was investigating was characterized as "definitely" some type of assault, and the officer testified

that Benton was evasive, causing the officer to be uneasy about Benton's intentions. The officer patted down Benton and found him to be in possession of a pistol.

■ *Cobbs* teaches that the officer had to have had articulable facts of potential danger in order to conduct a patdown search. We believe the facts herein met such requirement. Benton was hostile and acted in a harassing manner toward the store clerk. Benton was known to the officer as someone who caused disturbances. Benton was very intoxicated. When stopped by the officer, he was evasive. As *Cobbs* notes, the officer does not have to await the glint of steel before he can act to protect his safety. The facts of this case justified the patdown conducted by the officer.

Moreover, Benton's arguments, that he was being evasive because he wanted to go home; that he was staggering because he hurt his leg and not because of intoxication; and that he called the clerk a name because she called him a name, vary in part from the testimony presented in the trial court. The testimony at trial indicated that Benton was not evasive because he simply wanted to go home, that he was intoxicated and not limping, and that the officer did not know about Benton's claim that the clerk called him a name. Conflicts in the evidence presented at a motion hearing are properly resolved by the trial court. *State v. Anderson,* 107 N.M. 165, 754 P.2d 542 (Ct.App.1988). We find no error in the trial court's ruling on this issue.

#### (B) Preliminary Hearing and Ineffective Assistance of Counsel

Benton articulates these claims pursuant to *State v. Franklin,* 78 N.M. 127, 428 P.2d 982 (1967), *cert. denied,* 394 U.S. 965, 89 S.Ct. 1318, 22 L.Ed.2d 566 (1969) and *State v. Boyer,* 103 N.M. 655, 712 P.2d 1 (Ct.App. 1985). However, no underlying facts are cited to the court concerning these contentions and Benton makes no argument in support of the issues. There is apparently no factual support for these issues in the record and there is, therefore, no basis on which we can review these contentions.

*See State v. Romero,* 87 N.M. 279, 532 P.2d 208 (Ct.App.1975) (matters not of record present no issue for review).

HADDENHAM'S ISSUES

(A) Ineffective Assistance of Counsel

Haddenham contends his right to effective assistance of counsel was violated because counsel did not tender any defense instructions and because of twelve other specifically listed alleged failings. We do not discuss the twelve items because Haddenham has failed to show any resulting prejudice. *See State v. McGuinty,* 97 N.M. 360, 639 P.2d 1214 (Ct.App.1982).

In *State v. Talley,* 103 N.M. 33, 702 P.2d 353 (Ct.App.1985), we held that the failure of counsel to tender correct defense instructions, supported by the evidence, deprived defendant of his right to effective counsel because it deprived him of a defense. Haddenham argues his case is similar to *Talley.* We do not agree that the comparison is apt, because here there was no factual basis for any of the defense instructions defendant claims should have been given.

As shown by the record, Haddenham pawned an antique gun belonging to his mother so that he could rent some equipment he needed to complete a job on which he was working as a subcontractor. Before Haddenham could redeem the pawned firearm, it was seized by the police.

Trial counsel's theory of the case appeared to be that there was no crime because the gun was an antique and therefore it was excluded from coverage under the federal firearms act. When we proposed affirmance of the issues raised in the docketing statement on the basis that this was a state prosecution to which the federal exemption for antique firearms did not apply, Haddenham moved to amend his docketing statement to raise the issue of ineffective assistance of counsel for counsel's failure to tender a mistake of fact instruction, the mistake of fact being that Haddenham thought it was lawful for him to possess an antique firearm. When we proposed affirmance of this issue because an erroneous belief in the lawfulness of one's acts is a mistake of law, not a mistake of fact, and the uniform jury instruction on mistake of law is followed by a use note stating no instruction on this subject shall be given, SCRA 1986, 14–5121, Haddenham argued that one of the exceptions referred to in the committee commentary to UJI Crim. 14–5121 applied.

The issue raised in the briefs is not the issue raised in the docketing statement. Nor is it the issue raised in the first memorandum in opposition. Rather, as argued in his second memorandum in opposition, Haddenham contends that a mistake of law instruction should have been tendered because the crime includes a knowledge requirement and because he received erroneous advice on the law from an agent of the state, his probation officer. Haddenham contends that both of these circumstances create exceptions to the general rule that no instruction on mistake of law should be given. These exceptions, explained in R. Perkins, *Criminal Law* 923, –25 (2d ed. 1969), are noted in the committee commentary to UJI 14–5121. Also, for the first time in his reply brief, Haddenham argues that trial counsel was ineffective for failing to request "the instructions discussed in *State v. Matamoros,* 89 N.M. 125, 547 P.2d 1167 (Ct.App.1976) [.]"

■ Haddenham's contention that the knowledge requirement turns the crime of a felon in possession into a crime requiring knowledge that one's act is unlawful is not supported by the law. There is no knowledge requirement in the statute. § 30–7–16. *See also* SCRA 1986, 14–701. The statute simply proscribes possession of a firearm by a felon. The knowledge requirement is added by the definition of possession. *See* SCRA 1986, 14–130 (a person is in possession of something when he knows what it is, he knows where it is, and he exercises control over it). Haddenham argues the requirement of knowing what it is means that he must, in this case, know the firearm was a firearm he was not permitted by law to carry. We disagree.

The jury instruction for possession was taken, in part, from *State v. Giddings,* 67 N.M. 87, 352 P.2d 1003 (1960). Committee

commentary to UJI Crim. 14–130. *Giddings*, relying on a California case, discusses the distinction between knowing the narcotic character of the item possessed and knowing that possessing such narcotic is against the law. *Id.* at 92–4, 352 P.2d at 1006–8. It is only the former knowledge that is required under statutes proscribing possession. *Id.* Thus, in this case, Haddenham only had to have known that the gun was a firearm. There was no requirement that Haddenham knew that it was unlawful for him to possess this particular gun; thus, it was not ineffective assistance for trial counsel to fail to tender an instruction on mistake of law. *Cf. State v. Sanchez*, 98 N.M. 781, 652 P.2d 1232 (Ct.App. 1982) (failure to file non-meritorious motion does not constitute ineffective assistance).

█ The second exception Haddenham contends applies in this case is that he received erroneous advice by an agent of the state concerning the lawfulness of his carrying of the weapon at issue. Haddenham claims trial counsel was ineffective because he "failed to elicit available evidence to show that the defendant relied on the advice of his probation officer concerning his right to own an antique pistol and failed to elicit available testimony establishing that the defendant was operating under a mistake of fact or mistake of law." Haddenham also asserts that the "record below supports a finding that the probation officer erroneously implied to the defendant that possession of an antique pistol was not a violation of his conditions of probations [sic]." On the basis of the latter contention, he contends trial counsel was ineffective for failing to tender an instruction based on mistake of law.

The record fails to indicate facts supportive of this contention. Haddenham's probation officer testified that he never read the federal act, containing an exclusion for antiques, to Haddenham; instead, the officer explained to Haddenham the items he could not possess and indicated they were contained in a form. The form did not include the exclusion for antiques. Upon the facts adduced below, it was not ineffective assistance to fail to tender an instruction which had no basis in the evidence.

*See State v. Shafer*, 102 N.M. 629, 698 P.2d 902 (Ct.App.1985) (a party is not entitled to jury instructions not supported by the evidence). *Cf. State v. Sanchez.*

Finally, Haddenham argues that counsel was ineffective for failing to tender the instructions discussed in *Matamoros*. *Matamoros*, however, concerned explicit instructions on presumptions that were given to the jury. No such instructions concerning presumptions, however, were given here, and *Matamoros* is inapplicable to the ineffective assistance issue raised herein.

After the briefs were filed in this case, Haddenham wrote the court a letter calling our attention to an additional authority, *Carella v. California*, 491 U.S. 263, 109 S.Ct. 2419, 105 L.Ed.2d 218 (1989). Haddenham explained this authority was relevant because he had argued that knowledge was an essential element, that the jury instruction on general intent provides that a person acts intentionally even though he may not know his act is unlawful, and *Carella* prohibits jury instructions on presumptions having the effect of relieving the state of its burden of proof in criminal cases. Haddenham's letter mentions the general intent instruction for the first time. The letter seeking to argue this point incident to his citation of additional authorities pursuant to SCRA 1986, 12–213(D)(2), is not timely. *Cf. State v. Sisneros*, 98 N.M. 201, 647 P.2d 403 (1982) (raising matters in a motion for rehearing is too late). In addition, the issue before the court is effective assistance of counsel.

Haddenham's contention that he was deprived of ineffective assistance of counsel is without merit.

### (B) Preemption

█ Haddenham argues that the state firearms legislation has been preempted by federal law. There are two aspects to the preemption issue. First, state law is superseded when state and federal law conflict, and second, preemption occurs when Congress legislates within a particular field and explicitly or implicitly excludes states from legislating in that area. *Ashlock v. Sunwest Bank of Roswell, N.A.*, 107 N.M. 100, 753 P.2d 346 (1988). Although Had-

denham contends both aspects apply in this case, the very language of the congressional findings and declaration upon which defendant relies, Pub.L. 90–351, Section 901, reproduced at 18 U.S.C.A. Section 921, at 217–18 (1976), demonstrates that Congress did not intend to exclude states from the field of regulating firearms. The congressional findings indicate, instead, that state regulation of firearms alone was, and would continue to be, ineffective without supplementary federal legislation. The aim of the federal legislation was to make possible "effective State and local regulation[.]" *Id.* at ¶ (3). Thus, Congress explicitly recognized the existence of state regulation, and under these circumstances, no preemption question is raised. *See State v. McHorse,* 85 N.M. 753, 517 P.2d 75 (Ct.App.1973). Moreover, 18 U.S.C. Section 927 (1988) explicitly states the intent of Congress to not occupy the field unless there is a direct and positive conflict between the state and federal law, making it impossible to reconcile the two.

Comparison of the state and federal provisions fails to demonstrate this level of conflict or incompatibility. Although both statutes proscribe receipt of firearms by certain convicted felons, Section 30–7–16; 18 U.S.C. Section 922 (1988), and federal law excludes antique firearms from its definition, 18 U.S.C. Section 921(a)(3) and (16) (1988), this is not a direct and positive conflict. A direct and positive conflict exists when obeying state law would make compliance with federal law impossible or where state law discourages what federal law encourages. *Tellis v. United States Fidelity & Guar. Co.,* 625 F.Supp. 92 (N.D. Ill.1985). The fact that the state and federal firearms laws may be different is not a sufficient basis upon which to find a conflict so as to nullify state law. *See Kreshesky v. Codd,* 89 Misc.2d 439, 391 N.Y.S.2d 792 (1976); *see also United States v. Haddad,* 558 F.2d 968 (9th Cir.1977) (recognizing that federal and state firearms laws overlap one another and are viewed as complementary).

(C) Sufficiency of the Evidence

Haddenham contends the evidence was insufficient because there was no evidence he knew the firearm he possessed was in fact illegal. This contention has no merit for the reasons discussed above concerning counsel's failure to tender a mistake of law instruction.

(D) Antique Firearm Instruction and Age of Prior Conviction Used to Enhance Sentence

Haddenham makes these claims pursuant to *Franklin* and *Boyer.* However, he neither makes any argument nor cites any authorities to the court in support of these issues. As to the instruction issue, we conceive of no reason why the trial court in this New Mexico prosecution would be required to instruct on exemptions to the law of another jurisdiction. As to the age of the prior conviction, our habitual offender act does not limit enhancement to prior felony convictions within a certain time. § 31–18–17. These issues are therefore without merit.

(E) Confrontation and Cruel and Unusual Punishment

Finally, Haddenham contends that failure to reverse would deny him his right of confrontation and his right to be free from cruel and unusual punishment. Initially, we question whether these issues are properly raised in his brief. They were not raised in the docketing statement. Nor has Haddenham explained how the confrontation right pertains to his case. However, we do not decide these issues on these grounds. Rather, we determine that even if they were properly raised initially, they must be considered abandoned. *State v. Casteneda,* 97 N.M. 670, 642 P.2d 1129 (Ct.App.1982). Apart from citation to the relevant constitutional provisions, there is no argument or citations concerning these contentions.

CONCLUSION

The convictions of each defendant are affirmed; however, the cases are remanded for vacation of the enhanced sentences under Section 31–18–17(C) and for resentencing consistent herewith.

IT IS SO ORDERED.

MINZNER and CHAVEZ, JJ., concur.