814 P.2d 123

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Arthur CASTRILLO,
Defendant–Appellant.**

**No. 11988.**

Court of Appeals of New Mexico.

April 25, 1991.

Certiorari Denied June 19, 1991.

**256**

Tom Udall, Atty. Gen., Katherine Zinn, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Jacquelyn Robins, Chief Public Defender, Sheila Lewis, Assistant Appellate Defender, Santa Fe, for defendant-appellant.

## CERTIFICATION ORDER

MINZNER, Judge.

Defendant appeals from his conviction after trial by jury for the crime of felon in possession of a firearm. Defendant also appeals the subsequent enhancement of his sentence as a habitual offender. Defendant raises three issues on appeal: (1) whether the trial court erred in refusing to instruct the jury on duress, (2) whether it was double jeopardy to use the same prior felony to prove both the crime of felon in possession of a firearm and defendant's status as a habitual offender, and (3) whether the trial court erred in its denial of defendant's motion to discharge the jury. Other issues listed in the docketing statement but not briefed on appeal are deemed abandoned. *See State v. Fish*, 102 N.M. 775, 701 P.2d 374 (Ct.App.1985). Issues two and three present no difficulty, and we discuss how we would rule on these issues but for issue one. As to issue one, we believe the appeal presents an issue of substantial public interest that should be decided by the supreme court. *See* NMSA 1978, § 34–5–14(C)(2) (Repl.Pamp.1990). We are concerned that *Alexander v. Delgado*, 84 N.M. 717, 507 P.2d 778 (1973) compels a decision by this court with which the supreme court ultimately might not agree or which incompletely resolves the policy issues raised by the facts of this case. Therefore, we certify this case to the New Mexico Supreme Court. We first discuss the factual background against which this case arose, then we discuss issues two and three, and finally we discuss the issue that gives rise to our decision to certify the appeal.

## BACKGROUND.

Defendant had acknowledged at the pre-trial conference that he was a felon and that he had been in possession of a firearm. Defendant also stated at the pre-trial conference that his defense would be duress. There was limited discussion of the incidents defendant planned to prove to support the defense. The state sought leave of the court to inquire on voir dire into the uncharged crimes that supported the defense. The state also sought leave to

prove certain other incidents to show that defendant was not under duress.

The uniform jury instruction for duress where it is offered as a defense to a crime other than homicide or escape from a jail or penitentiary provides as follows:

> Evidence has been presented that the defendant was forced to * * * * * * * * * * * under threats. If the defendant feared immediate great bodily harm to himself or another person if he did not commit the crime and if a reasonable person would have acted in the same way under the circumstances, you must find the defendant not guilty.
>
> The burden is on the state to prove beyond a reasonable doubt that the defendant did not act under such reasonable fear.

SCRA 1986, UJI 14–5130 (footnote omitted).

■ Thus, defendant was required to show four elements. These are: (1) that he was afraid, (2) that what he feared was great bodily harm to himself or another person, (3) that the feared harm was immediate, and (4) that a reasonable person who stood in his shoes would have acted the same way.

Defendant introduced evidence of five incidents that he alleges establish duress. Defendant maintained that he purchased the gun to protect himself from serious bodily harm at the hands of his wife, some of her family members, and unknown would-be assailants. When the incidents occurred, defendant was not living with his wife because of serious marital difficulties. Defendant and his wife were both living in Roswell, each with his or her parents.

The first incident alleged was that defendant's wife intentionally smashed the windshield of the car he had been driving. The car, which belonged to defendant's brother, was parked outside his parents' house. A formal complaint was filed, but there was no prosecution. This incident occurred about five and a half months before defendant bought the gun.

The second incident alleged was that defendant's wife again appeared at the home of defendant's parents. This time she shouted obscenities at him and fired a gun. It is unclear whether she was aiming at defendant or in some other direction. She then got into her car and drove it into a truck parked nearby. A formal complaint was filed about this incident, but no prosecution was initiated. This incident occurred about four and a half months before defendant bought the gun.

The third incident alleged was that the former boyfriend of defendant's girlfriend came to the girlfriend's house while defendant was there and threatened to kill him. The boyfriend had a gun at the time he made the threat, and he had been threatening defendant since defendant began seeing the girlfriend. This incident took place about four and a half months before defendant bought the gun.

After the third incident, defendant and his girlfriend moved to Albuquerque to avoid further problems. They remained there for four months. Defendant ended the relationship. He later returned to his parents' house in Roswell.

The fourth incident alleged was that the car defendant had been driving was shot up. Defendant had gone to visit his wife at her sister's house. When he walked around to the side of the house to knock on a window, he heard gunshots and screeching tires. He ran back to the car to find three bullet holes in the hood and three on the right fender. Two ricochets had hit the windshield. The windows of the car were darkly tinted, making it impossible for someone outside to tell whether it was occupied. The car belonged to defendant's brother, but defendant alleges that his wife and her brothers knew that defendant had been using the car. The state asserts that there was no evidence that the wife's brothers knew who had been driving the car. This incident occurred three days before defendant bought the gun.

On December 23, 1988, defendant bought a .38 special handgun. He put it in a drawer at his parents' house, where it remained until the fifth incident.

The fifth incident alleged began when defendant heard an engine revving loudly

outside his parents' house. He could see that the car was his wife's and that there were four people in it. At his mother's request, defendant went outside to investigate. He put the pistol in his pants before going out into the yard. Defendant's wife, her sister, and two of her brothers were in the car. His wife was shouting obscenities. Defendant leaned in the window, allegedly to calm her down. She began swinging her fist, scratching at his face and grabbing at his watch and necklace. One of her brothers got out of the car and took out a gun. Defendant then drew his gun and fired at that brother. The other brother then came at defendant with a flashing object in his hand. Defendant swung at this brother several times. When this brother continued to advance, defendant fired again. The wife and her relatives left, leaving their gun behind. Defendant surrendered himself to the police two days later, turning over to them both the gun he had bought and the gun left by his wife's brother.

At the close of all evidence, defendant submitted a duress instruction that was based on the uniform jury instruction for duress as a defense to non-homicide crimes other than escape from jail or penitentiary. *See* UJI 14–5130; *cf.* SCRA 1986, 14–5132. The state objected, and the trial court refused to give the instruction. Defendant was then convicted of being a felon in possession of a firearm.

## DOUBLE JEOPARDY.

■ Defendant contends that use of the same prior felony to prove both the crime of felon in possession of a firearm and defendant's status as a habitual offender violates the prohibition against double jeopardy. Pursuant to *State v. Haddenham*, 110 N.M. 149, 793 P.2d 279 (Ct. App.1990), the state concedes that enhancement of defendant's sentence as a habitual offender was improper. Therefore, but for our decision to certify, we would hold that the enhancement provision of defendant's sentence is invalid, and we would remand this matter for resentencing. In connection with this issue, a question has arisen regarding the extent of the trial court's

sentencing powers on remand. We would not, however, address this question. To do so would constitute an impermissible advisory opinion of this court. *See State v. Jacobs*, 102 N.M. 801, 701 P.2d 400 (Ct.App. 1985).

## MOTION TO DISCHARGE THE JURY.

■ Defendant argues that the trial court improperly denied defendant's motion to discharge the jury. In 1989, the legislature enlarged the pool of prospective jurors in New Mexico by amending NMSA 1978, Section 38–5–3(A) (Repl.Pamp.1987) to add driver's license holders to the existing pool of registered voters. *See State ex rel. Stratton v. Serna*, 109 N.M. 1, 780 P.2d 1148 (1989). Defendant contends that the broadened jury pool takes effect ninety days after the adjournment of the legislative session. However, the New Mexico Supreme Court has held that the broadened jury pool was to take effect ninety days after the next general election. *Id.*

■ Defendant contends that the supreme court's analysis in *Serna* is based on neither law nor reason and asks this court to reconsider *Serna* on the merits. Pursuant to *Alexander*, supreme court precedent controls. Thus, we are obligated to abide by *Serna* and, but for our decision to certify, we would hold that the trial court properly denied defendant's motion to discharge the jury.

## WHETHER THE TRIAL COURT ERRED IN REFUSING TO INSTRUCT THE JURY ON DURESS.

■ Defendant argues that the trial court erred in refusing to instruct the jury on duress. Defendant also contends that the state failed to timely object to his duress instruction. Before all the evidence was introduced, the state was not in a position to evaluate whether such evidence was sufficient to merit a duress instruction. Defendant must first be given an opportunity to establish a prima facie showing of duress. *See Esquibel v. State*, 91 N.M. 498, 576 P.2d 1129 (1978); *State v. Torres*, 99 N.M. 345, 657 P.2d 1194 (Ct.App. 1983). As such, we are not persuaded that

the state's objection was untimely. We now turn to defendant's argument that the trial court erred in refusing to instruct the jury on duress, because there was sufficient evidence to create a prima facie case.

■ This court has interpreted the instruction on duress defendant asked the court to give the jury as requiring continuing and constant fear of great bodily harm extended over a substantial period of time. *See State v. Norush,* 97 N.M. 660, 642 P.2d 1119 (Ct.App.1982). We have also held that the defense of duress is not established by a showing that defendant was, at some prior time, threatened with violence. Rather, defendant must show that he was under a personal constraint at the time of the actual commission of the crime charged. *See State v. Lee,* 78 N.M. 421, 432 P.2d 265 (Ct.App.1967). We recognize that *Lee* was decided before *Esquibel* and *Torres;* that the uniform jury instruction on which defendant based the instruction he offered was applied by the supreme court in *Esquibel;* and that this court followed *Esquibel* in deciding *Torres* and *Norush.* What constitutes present, immediate, and impending compulsion after *Esquibel* depends on the circumstances of each case. *See State v. Norush.*

Defendant's testimony about his own state of mind, coupled with the evidence of threats and threatening acts, was sufficient to create issues for the jury on whether he was afraid and whether he feared great bodily injury. The evidence suggested that defendant may have feared being shot, as well as lesser physical assaults, from at least four different assailants—his wife, two of her brothers, and the former boyfriend of the woman with whom he had recently broken up. Given the evidence, it was also a jury question whether a reasonable person would have acted the same way under the circumstances. The only requirement remaining is that the feared harm be immediate.

In *Esquibel,* the defendant was charged with escaping from a penitentiary. The trial court had refused to instruct the jury on duress. The supreme court reversed the conviction. The major issue was whether the feared harm was immediate. The court found that there was "substantial evidence of a prolonged history of beatings and serious threats toward this defendant by certain guards and prison personnel * * * * a jury might conclude that the defendant acted under a genuine fear of great bodily harm to himself." *Id.,* 91 N.M. at 501, 576 P.2d at 1132. The most recent threat to the defendant at the time of his escape had been made forty-eight to seventy-two hours earlier. However, the court held that "[u]nder the circumstances of this case, the passage of two to three days between threat and escape does not suffice to remove the defense of duress from the consideration of the jury. What constitutes present, immediate and impending compulsion depends on the circumstances of each case." *Id.* at 501–502, 576 P.2d at 1132–33.

Immediacy of the threatened harm as an element of duress was also an issue in *Torres,* in which the defendant had been convicted of fraud. Defendant, using an alias, bought a computer with a check drawn on an account she had opened in the name of a business she did not own. She was alone when she made the purchase. *Id.,* 99 N.M. at 348, 657 P.2d at 1197. However, evidence was presented that tended to show she had been subjected to "a pattern of discipline, beatings and teachings," by which her " 'common law husband,' " who was actually married to defendant's teenage daughter, had "subjugated [her] to his will and beliefs." *Id.* at 346, 657 P.2d at 1195. The court instructed the jury on duress. However, it also gave the following instruction:

"The force which is claimed to have compelled criminal conduct against the will of the actor must be immediate and continuous and threaten grave danger to his person or that of another during all of the time the act is being committed. It must be a force threatening great bodily harm that remains constant in controlling the will of the unwilling participant while the act is being performed and from which he cannot then withdraw

in safety. Fear of future harm cannot be the basis of such a defense."

*Id.* at 347, 657 P.2d at 1196.

At trial, defendant objected to the last sentence of this supplementary instruction. This court held that the "effect [of the supplementary instruction] was to take from the jury what was properly a question of fact." *Id.* The conviction was reversed. *Id.* at 348, 657 P.2d at 1197.

The principle that seems to underlie both of these cases is that, at least where defendant's fear is based on a pattern of prior threats, the requirement of immediacy should not be interpreted too literally. *See id.* at 347, 657 P.2d at 1196 ("the circumstances of the *Esquibel* case show that [the immediacy requirement of *State v.*] *LeMarr* [83 N.M. 18, 487 P.2d 1088 (1971)] is not to be read literally.") Thus, if the instruction construed in *Esquibel* is applicable to the crime of felon in possession, we believe the evidence was sufficient to create a question for the jury as to whether, under the circumstances of this case, the feared harm was immediate. *But cf. State v. Lee.*

The state concedes that the majority position is that duress and the other justification defenses do apply to this offense under some circumstances. However, the state argues that:

> [B]ecause of the possessory nature of the crime of being a felon in possession of a firearm, a justification defense is proper only in those situations where the possession is for a brief period during the time of present, existing danger and where there is no indication that a defendant possessed the firearm through any pre-conceived design prior to the existence of the emergency situation.

The state has cited numerous cases to support this proposition, all federal or from other states. *See, e.g., People v. King,* 22 Cal.3d 12, 582 P.2d 1000, 148 Cal.Rptr. 409 (1978) (In Bank); *United States v. Panter,* 688 F.2d 268 (5th Cir.1982).

The authority cited by the state indicates that in a majority of jurisdictions that have considered this issue, the duress defense as applied to the defense of being a felon in possession or a comparable crime has been recognized as indistinguishable from the defense of necessity. *See, e.g., State v. Crawford,* 308 Md. 683, 691, 521 A.2d 1193, 1197 n. 1 (1987); *United States v. Nolan,* 700 F.2d 479, 484 n. 1 (9th Cir.), *cert. denied,* 462 U.S. 1123, 103 S.Ct. 3095, 77 L.Ed.2d 1354 (1983); *cf. United States v. Panter,* 688 F.2d at 272 n. 7 (discussing difference between self-defense and necessity). The authority cited by the state also indicates that as applied to the crime of felon in possession or related crimes, the defense of duress or necessity has been interpreted fairly consistently. We conclude that the authority cited by the state indicates in the majority of state courts that have considered this issue, the concept of immediate harm has been more strictly interpreted in connection with the crime of felon in possession than our present uniform jury instruction on duress. *See State v. Blache,* 480 So.2d 304 (La.1985) (evidence must show temporary possession for period no longer than the necessity for use in self-defense); *cf. Duvall v. Commonwealth,* 593 S.W.2d 884 (Ky.Ct.App.1979) (felon given gun to hold two days prior to altercation; defense of necessity not available, because when possession taken altercation was not foreseen); *accord People v. Rau,* 174 Mich.App. 339, 436 N.W.2d 409 (1989) (violation of inmate in possession statute); *Mungin v. State,* 458 So.2d 293 (Fla.Dist.Ct.App.1984) (En Banc) (same). The law in federal courts is similarly restricted. *See United States v. Agard,* 605 F.2d 665 (2d Cir.1979) (defense of duress and coercion not available to defendant who placed himself in dangerous situation); *United States v. Crittendon,* 883 F.2d 326 (4th Cir.1989) (defendant must show real and specific threat at time of possession); *United States v. Gant,* 691 F.2d 1159 (5th Cir.1982) (establishing four-part test often cited on elements of justification defense available to one accused as felon in possession); *United States v. Singleton,* 902 F.2d 471 (6th Cir.), *cert. denied,* — U.S. —, 111 S.Ct. 196, 112 L.Ed.2d 158 (1990) (keystone of justification defense to a charge of being a felon in possession is that a defendant must have no alternative, either be-

fore or during the event, to avoid violating the law); *United States v. Wheeler,* 800 F.2d 100 (7th Cir.1986) (following *Gant* ), *overruled on other grounds, United States v. Sblendorio,* 830 F.2d 1382 (7th Cir.1987); *United States v. Stover,* 822 F.2d 48 (8th Cir.1987) (no justification defense if defendant maintains possession after danger subsides; following *Gant* ); *United States v. Nolan* (evidence of self-defense, duress, and necessity not sufficient to require jury instruction where the defendant prolonged and renewed confrontation); *United States v. Vigil,* 743 F.2d 751 (10th Cir.) (following *Gant* ), *cert. denied,* 469 U.S. 1090, 105 S.Ct. 600, 83 L.Ed.2d 709 (1984).

Further, the state asserts that "[t]he very purpose of statutes proscribing possession of firearms by felons would be thwarted" if the application of the defense was not limited in the manner suggested. However, a use note to the relevant jury instruction provides that the instruction be given "when duress is a defense to any crime except homicide, a crime requiring an intent to kill and escape from a penitentiary." UJI 14–5130, use note 1; *see also Esquibel v. State,* 91 N.M. at 501, 576 P.2d at 1132 ("We hold that duress is a defense available in New Mexico except when the crime charged is a homicide or a crime requiring intent to kill.") Nevertheless, the supreme court modified the instruction as to escape after the decision in *Esquibel. See* UJI 14–5132, effective July 1, 1980. The crime of felon in possession was created after *Esquibel* was decided. *See* NMSA 1978, § 30–7–16 (Repl.Pamp.1984); 1981 N.M.Laws, ch. 225, § 1. Thus, we are uncertain whether the language in *Esquibel* should be viewed as extending to the crime of felon in possession and, if so, whether the term "immediate * * * harm" as it appears in uniform jury instruction 14–5130 provides sufficient guidance to trial court judges in determining whether a prima facie case of duress has been made. *Cf. State v. Lee* (defendant must show that he or she was under a personal constraint at the time of the actual commission of the crime charged).

In summary, we think that, under the current instruction as to duress, the evidence appears to have presented a jury question, and thus we must conclude that the trial court erred in refusing to give the instruction tendered. *See Alexander v. Delgado.* However, we also think that the instruction should be revised with respect to the defense of duress or necessity so that, as to that defense, the law in New Mexico is consistent with the law in the majority of jurisdictions that have considered this issue. Finally, we think that defendant should have the benefit of the law as it existed on the date the offense with which he was charged was committed. *State v. Norush.* We have certified the question, rather than reversing and remanding for trial, because (a) it is possible we have misinterpreted the use of the term "immediate" in the uniform jury instruction on duress as to non-homicide crimes other than escape, and (b) if we have not misinterpreted the term, it seems to us important to consider the question of whether the defense of duress as applied to a felon in possession should be revised with respect to defendants charged with acts committed after the effective date of the revision. *See generally State v. Norush* (jury instructions that deprive accused of defense available at time of act are prohibited as ex post facto).

CONCLUSION.

But for our decision to certify, we would reverse and remand for resentencing as to issue two and would affirm as to issue three. We certify this case to the supreme court for consideration of whether the evidence is sufficient to support an instruction on duress and whether any prospective revision of the duress defense is necessary or appropriate, questions which arise in connection with issue one.

IT IS SO ORDERED.

BIVINS and CHAVEZ, JJ., concur.