**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number: _____

Filing Date: June 28, 2018

**NO. A-1-CA-36092**

**STATE OF NEW MEXICO,**

      Plaintiff-Appellee,

v.

**EL RICO CUMMINGS,**

      Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF OTERO COUNTY**
**James Waylon Counts, District Judge**

Hector H. Balderas, Attorney General
Eran Sharon, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Allison H. Jaramillo, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**OPINION**

**VANZI, Chief Judge.**

{1} Following entry of a conditional plea, Defendant El Rico Cummings appeals his convictions for possession of a firearm by a felon, contrary to NMSA 1978, Section 30-7-16(A) (2001), and receiving stolen property, contrary to NMSA 1978, Section 30-16-11(A) (2006). Defendant argues that (1) his convictions violate double jeopardy because they are based on the same firearm, and (2) the district court erred in denying his motion to suppress because an officer exceeded the scope of the search warrant when he forcibly opened a locked safe. Because we hold that (1) there was no double jeopardy violation and (2) the district court did not err in denying Defendant's motion to suppress, we affirm.

**BACKGROUND**

{2} The pertinent facts are undisputed. On June 9, 2013, the Alamogordo Police Department obtained and served an arrest warrant and a search warrant on Defendant at his home as part of an investigation into a shooting. Relevant here, the search warrant—the validity of which is not disputed—authorized police to search Defendant's home for firearms, ammunition, weapons or tools, cell phones, prescription and illegal narcotics and paraphernalia, documentation of the premises, and records as to the state of mind of the subjects of the warrant, including diaries or

journals. The parties agree that the search warrant did not specifically mention a lockbox or a safe.

{3}     At the hearing on Defendant's motion to suppress, an officer testified that while searching the house, he found a locked safe that was large enough to hold a firearm. According to the officer, when he was "handling the safe," it sounded like it had a metal object inside and had some weight to it. Neither Defendant nor his sister gave permission to the officers to search the safe, and neither Defendant nor his sister had a key to the safe available. Defendant later testified that he kept private things in his safe, such as bank statements and identity documents, including birth certificates and social security numbers.

{4}     The officer removed the safe to the police station for further investigation and opened it there. Although the officer did not obtain a second search warrant, he testified that he could have done so, and he conceded that there were not otherwise any exigent circumstances. The officer did not find the gun that he was looking for inside the safe, but instead found a different firearm that formed the basis for the two charges against Defendant for possession of a firearm by a felon and receiving stolen property. Defendant entered a no contest plea to both charges, reserving his right to appeal the denial of his motion to suppress.

## DISCUSSION

## Double Jeopardy

{5}     Defendant first argues that, because they are based on the same firearm, his convictions for felon in possession of a firearm and receiving stolen property violate double jeopardy. Defendant did not reserve a double jeopardy argument in his conditional plea. Nevertheless, double jeopardy claims are not subject to waiver and can be raised at any time before or after entry of a judgment. *See* NMSA 1978, § 30-1-10 (1963). Moreover, this Court has held that a guilty plea does not necessarily waive a claim of double jeopardy, although the defendant should reserve the issue in the plea agreement and must present a record capable of review for this Court to engage in a unitary conduct double jeopardy analysis. *See State v. Sanchez*, 1996-NMCA-089, ¶¶ 10-11, 14, 122 N.M. 280, 923 P.2d 1165.

{6}     We generally apply a de novo standard of review to the constitutional question of whether there has been a double jeopardy violation. *State v. Andazola*, 2003-NMCA-146, ¶ 14, 134 N.M. 710, 82 P.3d 77. The Double Jeopardy Clause "has been held to incorporate a broad and general collection of protections against several conceptually separate kinds of harm: (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense." *State v. Montoya*, 2013-NMSC-020,

¶ 23, 306 P.3d 426 (internal quotation marks and citation omitted). The present case deals with the question of whether Defendant has received multiple punishments for the same offense.

{7} For the double jeopardy prohibition against multiple punishments, there are two types of cases: (1) when a defendant is charged with violations of multiple statutes for the same conduct, referred to as "double description" cases; and (2) when a defendant is charged with multiple violations of the same statute based on a single course of conduct, referred to as "unit of prosecution" cases. *State v. DeGraff*, 2006-NMSC-011, ¶ 25, 139 N.M. 211, 131 P.3d 61 (internal quotation marks omitted). The present case is a double description case. For such cases, we apply the two-part test set forth in *Swafford v. State*, 1991-NMSC-043, ¶ 9, 112 N.M. 3, 810 P.2d 1223: (1) whether the conduct is unitary, and (2) if so, whether the Legislature intended to punish the offenses separately. *State v. Silvas*, 2015-NMSC-006, ¶ 9, 343 P.3d 616. "Only if the first part of the test is answered in the affirmative, and the second in the negative, will the double jeopardy clause prohibit multiple punishment in the same trial." *Id.* (internal quotation marks and citation omitted). The State concedes that the conduct is unitary, so we analyze the second part of the *Swafford* test.

{8} Where unitary conduct forms the basis for multiple convictions, we "inquire whether [the d]efendant has been punished twice for the same offense, and if so,

4

whether the Legislature intended that result." *Id.* ¶ 11. "In analyzing legislative intent, we first look to the language of the statute itself." *State v. Swick*, 2012-NMSC-018, ¶ 11, 279 P.3d 747. "If the statute does not clearly prescribe multiple punishments, then the rule of statutory construction established in *Blockburger v. United States*, 284 U.S. 299 . . . (1932) applies." *Swick*, 2012-NMSC-018, ¶ 11. Under *Blockburger*, we look to see whether each statute requires proof of a fact that the other does not. *See Swick*, 2012-NMSC-018, ¶ 12. When interpreting vague and unspecific or multipurpose criminal statutes, we apply a modified *Blockburger* test, which avoids a mechanical application of the elements test in favor of a case-by-case approach that considers the State's legal theory of the particular case. *See Silvas*, 2015-NMSC-006, ¶ 14; *Swick*, 2012-NMSC-018, ¶ 21; *State v. Gutierrez*, 2011-NMSC-024, ¶ 58, 150 N.M. 232, 258 P.3d 1024.

{9}     "If the *Blockburger* test shows that one statute is subsumed within the other, then the analysis ends and the statutes are considered the same for double jeopardy purposes." *Silvas*, 2015-NMSC-006, ¶ 12. "If one statute requires proof of a fact that the other does not, then the Legislature is presumed to have intended a separate punishment for each statute without offending principles of double jeopardy." *Id.*

{10}     The presumption that the Legislature intended separate punishments is not conclusive, however, and "may be overcome by other indicia of legislative intent."

*Swafford*, 1991-NMSC-043, ¶ 31. "[W]e must turn to traditional means of determining legislative intent: the language, history, and subject of the statutes[, and we] must identify the particular evil sought to be addressed by each offense." *Id.* ¶¶ 31-32. "If after examining the relevant indicia the legislative intent remains ambiguous, the rule of lenity requires us to presume that the Legislature did not intend multiple punishments for the same conduct." *Swick*, 2012-NMSC-018, ¶ 13.

{11} In the present case, Defendant pled to and was convicted of both possession of a firearm by a felon and receiving stolen property based on the single gun found within his locked safe. As indicated above, the State concedes that the conduct was unitary. We therefore turn to whether the Legislature intended that a defendant be punished twice for the same offense. *See Silvas*, 2015-NMSC-006, ¶ 11.

{12} The statute for possession of a firearm by a felon states that "[i]t is unlawful for a felon to receive, transport or possess any firearm or destructive device in this state." Section 30-7-16(A). The statute for receiving stolen property states that "[r]eceiving stolen property means intentionally to receive, retain or dispose of stolen property knowing that it has been stolen or believing it has been stolen, unless the property is received, retained or disposed of with intent to restore it to the owner," with a separate section setting forth the degree of felony when such property is a firearm. Section 30-16-11(A), (I). The statutes do not clearly prescribe multiple punishments,

so we evaluate whether each statute requires proof of a fact that the other does not. *See Swick*, 2012-NMSC-018, ¶¶ 11-12. Possession of a firearm by a felon requires a finding that the defendant be a felon, whereas receiving a stolen firearm does not; and receiving a stolen firearm requires a finding that the firearm received by the defendant be stolen, whereas possession of a firearm by a felon does not. *See* § 30-7-16(A); § 30-16-11(A), (I). The statutes each contain an element that the other does not, so we would typically presume that the Legislature intended a separate punishment for a violation of each statute. *See Silvas*, 2015-NMSC-006, ¶ 12.

{13}     Although the statutes are not vague or unspecific, Defendant nonetheless argues that we should apply the modified *Blockburger* test based on the State's legal theory and the facts of the present case. Specifically, Defendant argues that the two statutes "share the element that [Defendant] possessed the [specific handgun]" because "the element of proof for both charges was that he possessed a particular firearm . . . , which *was* stolen." Defendant argues, in other words, that even though "[f]elon in possession 'will not always entail proof' of possessing a *stolen* firearm, . . . in this case the firearm possessed *was* stolen." We are unpersuaded.

{14}     Defendant compares the present case to *Gutierrez*, in which our Supreme Court noted that, even though armed robbery may not always entail proof that an *automobile* was taken, in that case, it was required because the property *was* an

7

automobile, so the elements for armed robbery and the unlawful taking of a motor vehicle were the same. *See* 2011-NMSC-024, ¶ 58. However, the comparison is inapposite. In *Gutierriez*, a particular object was required to have been stolen in either case, which object was, in both cases, an automobile. *See id.* In the present case, both charges require the existence of a particular object, the firearm, but a *stolen* firearm is required in only one of the charges. In other words, although the handgun in the present case happened to *be* stolen, which finding was required to convict Defendant for receiving stolen property, it does not mean that the handgun's *stolen characteristic* was thus required in order to convict Defendant of being a felon in possession of a handgun. *See* § 30-7-16. Indeed, the fact that the handgun was stolen is irrelevant to the felon in possession charge, which is reflected in the grand jury indictment and the State's theory of the case. The facts of the present case do not require us to conclude differently. As indicated above, we therefore presume that the Legislature intended a separate punishment for each statute. *See Silvas*, 2015-NMSC-006, ¶ 12.

{15}     Because this presumption is not conclusive, however, we turn to traditional means of determining legislative intent. *See Swick*, 2012-NMSC-018, ¶ 13. We have previously interpreted legislative intent for both statutes. In *State v. Haddenham*, 1990-NMCA-048, ¶ 14, 110 N.M. 149, 793 P.2d 279, we stated that "[t]he felon in

8

possession statute provides for an enhanced punishment in order to keep firearms out of the hands of persons previously convicted and to deter recidivism." In *State v. Watkins*, 2008-NMCA-060, ¶ 17, 144 N.M. 66, 183 P.3d 951, we stated that "the [L]egislature's provision of separate punishment for receiving a stolen firearm as a recognition that the dangers to public safety are heightened when a firearm is kept by a person who has obtained its possession illegally." Defendant argues that these underlying policies are the same—to deter the illegal possession of firearms by "higher risk individuals." We disagree.

{16}     As stated, the emphasis of the legislative intent in the felon in possession statute is on deterring recidivism and "keep[ing] firearms out of the hands of persons previously convicted[.]" *Haddenham*, 1990-NMCA-048, ¶ 14. It is not simply a "higher risk" individual that the Legislature identified, but specifically those with prior criminal records *in order to deter recidivism. See id.* Conversely, the emphasis of the legislative intent in the receiving a stolen firearm statute is on increasing public safety by highlighting that the danger to the public is heightened when individuals obtain or possess firearms that were obtained illegally. *See Watkins*, 2008-NMCA-060, ¶ 17. The focus there is not in deterring recidivism but in protecting the public from a situation that contains *heightened* danger. We therefore conclude that the Legislature intended to punish possession of a firearm by a felon and receiving a

9

stolen firearm separately, and, as such, Defendant's convictions do not violate double jeopardy.

**Suppression**

{17}     Defendant also argues that the district court erred in denying his motion to suppress, maintaining that the officer exceeded the scope of the search warrant and forcibly opened a locked safe. "Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Paananen*, 2015-NMSC-031, ¶ 10, 357 P.3d 958 (internal quotation marks and citation omitted). The appellate court "reviews factual matters with deference to the district court's findings if substantial evidence exists to support them, and it reviews the district court's application of the law de novo." *State v. Almanzar*, 2014-NMSC-001, ¶ 9, 316 P.3d 183. Because the facts are not in dispute, we review the question de novo. *See id.*

{18}     As indicated above, Defendant does not dispute that the search warrant itself was valid—he only argues that the officer impermissibly exceeded the scope of the warrant when he opened the locked safe. Defendant also acknowledges that the Fourth Amendment to the United States Constitution permits the officer's actions. Instead, he argues that the officer's actions were impermissible under the greater protections provided by Article II, Section 10 of the New Mexico Constitution.

{19} "In New Mexico, the ultimate question in all cases regarding alleged search and seizure violations is whether the search and seizure was reasonable." *State v. Attaway*, 1994-NMSC-011, ¶ 20, 117 N.M. 141, 870 P.2d 103. In order to determine whether the officer's actions were reasonable, we look to the search warrant, which is required to describe with particularity the items to be seized. *See State v. Sabeerin*, 2014-NMCA-110, ¶ 26, 336 P.3d 990; *see also State v. Malloy*, 2001-NMCA-067, ¶ 9, 131 N.M. 222, 34 P.3d 611 (stating that "[a] search warrant is used as a means to establish the reasonableness of an intrusion").

{20} In the present case, while searching the house for firearms, bullets, and ammunition, which were items specified in the search warrant for seizure, an officer found a locked safe that, when he handled it, sounded like it had a metal object inside, had some weight to it, and was large enough to hold a firearm. Although the search warrant did not specify that a lockbox or a safe was an item to be seized, it is a container that a reasonable officer could conclude was likely to contain any number of the items described with particularity in the warrant—to wit: firearms, ammunition, weapons or tools, cell phones, prescription and illegal narcotics and paraphernalia, documentation of the premises, and records as to the state of mind of the subjects of the warrant, including diaries or journals. Although the container in the present case was locked, we hold that it was nonetheless reasonable for the officer to open the

container to discover whether it contained the items identified with particularity in the search warrant. We therefore conclude that the opening of the safe did not exceed the scope of the search warrant, and, as such, the district court did not err in denying Defendant's motion to suppress.

**CONCLUSION**

{21}   For the foregoing reasons, we affirm Defendant's convictions.

{22}   **IT IS SO ORDERED.**


_____
**LINDA M. VANZI, Chief Judge**

**WE CONCUR:**


_____
**EMIL J. KIEHNE, Judge**


_____
**DANIEL J. GALLEGOS, Judge**