585 P.2d 1352

**STATE of New Mexico,
Plaintiff-Appellee,**

v.

**Orlando GABALDON,
Defendant-Appellant.**

No. 3507.

Court of Appeals of New Mexico.

Sept. 26, 1978.

Writ of Certiorari Denied Oct. 26, 1978.

Thomas B. Root, Albuquerque, for defendant-appellant.

Toney Anaya, Atty. Gen., Santa Fe, Janice M. Ahern, Michael E. Sanchez, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

WOOD, Chief Judge.

Defendant was convicted of three robberies while armed with a deadly weapon. The deadly weapon was a firearm. One of the issues listed in the docketing statement was not briefed; that issue is deemed abandoned. *State v. Ortiz*, 90 N.M. 319, 563 P.2d 113 (Ct.App.1977). We discuss three issues: (1) competency; (2) witness immunity; and (3) validity of enhancing the sentence because of use of a firearm.

### Competency

In October, 1977 defendant was found incompetent to stand trial. In January, 1978 the State moved for a redetermination of competency. An evidentiary hearing was held on January 13, 1978, after which the trial court ruled there was no reasonable doubt that defendant was competent to stand trial. See *State v. Santillanes*, 91 N.M. 721, 580 P.2d 489 (Ct.App.1978).

At arraignment in a separate case on January 27, 1978, defense counsel questioned whether defendant was competent to be arraigned. The trial court ordered an examination that day "because the other case [the convictions involved in this case] is set for trial on Monday."

At a short hearing on January 30, 1978, prior to the beginning of trial in this case, the trial court was informed of a report from a psychiatrist and a psychologist concerning the examination of January 27, 1978. The report concluded that defendant was competent to stand trial. Defense counsel wanted the "doctor" to testify; the trial court granted a five-minute recess to get him. It was the State that attempted to obtain the doctor's presence during the recess. Apparently the doctor's presence could not be obtained in such a short period of time because the doctor's testimony was not taken at that point. Rather, the trial of the case began.

On January 31, 1978 a competency hearing was held. After conclusion of the hearing, at which the report referred to on January 30, 1978 was introduced as an exhibit, the trial court found there was no reasonable doubt that the defendant was competent to stand trial in the separate case. Defendant was then arraigned in the separate case. These proceedings took place after the guilty verdicts in this case. The testimony at this January 31, 1978 hearing was that, at the time of the examination on January 27, 1978, defendant was competent to stand trial.

Defendant contends he was deprived of a proper finding of competency. Our understanding of his contentions and our answers, follow.

■ (a) The evidence was insufficient to support the ruling of competency at the redetermination hearing of January 13, 1978. The evidence at that hearing supports the ruling of no reasonable doubt as to competency. The conclusion of the expert that defendant was competent at that time is essentially uncontradicted. See *State v. Lopez*, 92 N.M. 779, 581 P.2d 872 (1978).

(b) An issue of competency to stand trial in this case was raised on January 27, 1978 at the arraignment in the separate case. We will assume that the issue was raised.

■ (c) No hearing was held on the issue of competency after it was raised on Janu-

ary 27, 1978. We disagree; there was a short hearing prior to beginning the trial on January 30, 1978. Defendant, however, argues there was no hearing because the doctor did not testify on January 30, 1978 even though defendant requested that the doctor be called as a witness. If defendant wanted the doctor to testify on January 30, 1978 it was defendant's obligation to have the witness available to testify. Having been found competent on January 13, 1978, it was defendant's burden to show by a preponderance of the evidence that he was incompetent. *State v. Lopez*, supra. Defendant made no such showing.

■ (d) A finding of competency on January 30, 1978 was an abuse of discretion. We disagree; the only information before the court was that defendant was competent. Defendant presented no evidence of any kind to show incompetency.

(e) The hearing on January 31, 1978 did not cure the prejudice of failing to conduct a competency hearing prior to trial on January 30, 1978. There was a hearing prior to trial, at which defendant introduced no evidence.

Defendant was not deprived of a proper finding as to his competency.

*Witness Immunity*

As to one of the armed robberies, the prosecutor, in the opening statement referring to a witness to be called, stated that it was "quite likely that the first thing he is going to do is plead the Fifth Amendment and there will be a procedural way of getting him to give his testimony."

When the witness was called to the stand and asked if he knew the defendant, the witness' attorney advised the witness to claim his privilege against self-incrimination. Defendant objected and moved for a mistrial, asserting the prosecutor knew this was going to happen and purposely called the witness to the stand knowing the privilege would be invoked. The prosecutor then stated: "Under Rule 58 of the Rules of Criminal Procedure and pursuant to an agreement which has been entered into by

. . . . [the witness, the witness' lawyer and the prosecutor] we move the Court to order that this man be given a limited immunity, and that he be given an immunity from anything more severe than a deferred sentence for a conviction in this matter." A written order was entered which states that the witness is to be given limited immunity in exchange for his testimony; the immunity was "for any penalty more severe than a deferred sentence". The witness testified; defendant objected to the entire procedure.

■ (a) *State v. Thoreen*, 91 N.M. 624, 578 P.2d 325 (Ct.App.1978) questioned the validity of Rule of Crim.Proc. 58; however, *Campos v. State*, 91 N.M. 475, 580 P.2d 966 (1978) upheld the rule. *Campos* answers defendant's claim that the rule is invalid.

(b) Defendant also claims that Rule of Crim.Proc. 58 was not followed. Our answer is that the rule was not applicable. Referring to the written order required by the rule, *Campos v. State*, supra, states: "The order must also contain a specific condition that the State of New Mexico shall forego the prosecution of the person for criminal conduct about which he is questioned and testifies." See Rule of Crim. Proc. 58(b). Here the "deal" involved a limitation upon the witness' sentence, if convicted; there was no immunity from prosecution.

■ Although Rule of Crim.Proc. 58 applies only to immunity from prosecution, this does not mean that other agreements are not to be enforced. Agreements for reduced charges have been enforced "within the dictates of due process"; that is, on constitutional grounds. *State ex rel. Plant v. Sceresse*, 84 N.M. 312, 502 P.2d 1002 (1972); *State v. Session*, 91 N.M. 381, 574 P.2d 600 (Ct.App.1978). Compare *State v. Plant*, 86 N.M. 2, 518 P.2d 961 (Ct.App. 1973). The agreement in this case, for a reduced sentence if conviction occurs, was an enforceable agreement on due process grounds and dealt with a type of agreement not covered and not prohibited by Rule of Crim.Proc. 58.

■ (c) Defendant also contends that he was denied due process by the misconduct of the prosecutor. He asserts there were two items of misconduct: 1) knowingly causing the witness, who was defendant's accomplice, to invoke his privilege against self-incrimination, and 2) granting immunity to the witness in the presence of the jury. These claims overlook the facts.

The prosecutor did call the witness to the stand knowing the witness would claim the testimonial privilege. However, the prosecutor also knew that an agreement had been reached under which the witness would testify. The calling of the witness under these circumstances did not result in the prosecutor building a case on the basis of inferences arising from use of the testimonial privilege *because the witness testified.* *State v. Vega*, 85 N.M. 269, 511 P.2d 755 (Ct.App.1973) is not applicable to this situation.

Disclosure to the jury of the agreement between the prosecutor and the witness was not a violation of due process. *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972) states: "[E]vidence of any understanding or agreement as to a future prosecution would be relevant to his [the witness'] credibility and the jury was entitled to know of it."

■ (d) Defendant asserts that informing the jury of the agreement was somehow an improper comment on defendant's failure to testify. We disagree; the agreement did not refer to defendant in any way. See *State v. Palmer*, 89 N.M. 329, 552 P.2d 231 (Ct.App.1976). Defendant also contends that the prosecutor's opening argument which characterized the witness as defendant's accomplice, together with informing the jury of the agreement between the prosecutor and witness somehow amounted to an expression of opinion concerning defendant's guilt prior to receipt of evidence establishing guilt. We disagree. The opening statement went only to what the witness would testify. We have previously pointed out that it was proper to inform the jury of the agreement because such went to the witness' credibility. Neither was an expression of opinion of guilt.

*Validity of Sentences*

The robberies while armed with a deadly weapon were, in this case, second degree felonies. Section 40A–16–2, N.M.S.A.1953 (2d Repl.Vol. 6, Supp.1975). The sentence for a second degree felony is not less than ten nor more than fifty years. Section 40A–29–3(B), N.M.S.A.1953 (2d Repl.Vol. 6). However, there were separate findings of fact that a firearm was used. When there is a separate finding of fact that a firearm was used in the commission of "any felony except a capital felony," the minimum and maximum sentence is to be increased by five years. Section 40A–29–3.1, N.M.S.A. 1953 (2d Repl.Vol. 6, Supp.1975). In accordance with the above statutes, defendant was sentenced to a prison term of not less than fifteen nor more than fifty-five years for each of the armed robberies.

Defendant asserts the five-year enhancements were invalid. His arguments and our answers, follow.

(a) The Legislature did not intend that the firearm enhancement provision should apply to armed robbery. Defendant relies on *Simpson v. United States*, 435 U.S. 6, 98 S.Ct. 909, 55 L.Ed.2d 70 (1978). In *Simpson*, defendant was convicted of bank robbery by use of a dangerous weapon and of using a firearm to commit a felony. He was sentenced for both the bank robbery and the use of the firearm. *Simpson* held that these were two distinct felonies and that Congress did not intend that the sentence for use of a firearm should be imposed in addition to the sentence for bank robbery by use of a dangerous weapon.

■ Section 40A–29–3.1, supra, does not create a new class of crimes. Rather, this statute provides for additional consequences for felonies committed by use of a firearm. *State v. Barreras*, 88 N.M. 52, 536 P.2d 1108 (Ct.App.1975). The wording of § 40A–29–3.1, supra, providing for an enhanced sentence for the use of a firearm in committing "any felony except a capital felony," shows a legislative intent that the statute should apply to the noncapital felony—armed robbery. This legislative intent is clearly shown by amendments which increased the felonies to which the firearm enhancement provisions apply. Compare the statutory language set out in *State v. Barreras*, supra, with the language set out in *State v. Kendall*, 90 N.M. 236, 561 P.2d 935 (Ct.App. 1977).

*Simpson v. United States*, supra, is not applicable because (1) two distinct felonies were involved in *Simpson* and only one felony is involved in our case, and (2) contrary to the interpretation of congressional intent in *Simpson*, supra, the intent of the New Mexico Legislature was that the firearm enhancement should apply to any felony other than a capital felony.

(b) The special-general statute rule prevents application of § 40A–29–3.1, supra. Our understanding of defendant's argument is that the sentencing provisions for robbery while armed with a deadly weapon are specific, that the firearm enhancement provisions are general and that because of the specific provisions, the general firearm enhancement provisions cannot be applied. This argument overlooks the fact that the special-general statute rule comes into play only when the two statutes conflict and cannot be harmonized to give effect to a consistent legislative policy.

■ The two statutes involved here do not conflict. The offense, robbery while armed with a deadly weapon, was declared to be a second degree felony for which the prison sentence is not less than ten nor more than fifty years. This offense can be committed in various ways, without using a firearm—by using a knife, brass knuckles, slingshots, bludgeons, etc. See definition of "deadly weapon" in § 40A–1–13(B), N.M.S. A.1953 (2d Repl.Vol. 6); see also *State v. Trujillo*, 91 N.M. 641, 578 P.2d 342 (Ct.App. 1978); *State v. Duran*, 91 N.M. 38, 570 P.2d 39 (Ct.App.1977). When, however, the deadly weapon used is a firearm, the enhanced sentence is imposed. The legislative policy is that any felony, other than a capital felony, committed by use of a firearm, should be more severely punished than felonies committed without using a firearm. There being no conflict between the first

offense penalty for robbery while armed with a deadly weapon and the enhanced penalty because the deadly weapon was a firearm, there is no basis for application of the special-general statute rule. *State v. Wilkins*, 88 N.M. 116, 537 P.2d 1012 (Ct.App. 1975); see *State v. Roland*, 90 N.M. 520, 565 P.2d 1037 (Ct.App.1977).

(c) The enhanced penalty for use of a firearm is barred by double jeopardy. Defendant relies on *United States v. Busic*, 22 Cr.L.Rep. 2444, 587 F.2d 577, which is a decision of the Federal Third Circuit in January, 1978. Since this decision had not been published in the Federal Reporter, we inquired as to the status of this decision. We are informed that the opinion in *United States v. Busic*, supra, has been withdrawn and that the case was resubmitted for decision in June, 1978.

*State v. Tanton*, 88 N.M. 333, 540 P.2d 813 (1975) applied the same evidence test in determining whether double jeopardy applied. Under that test, if either criminal charge requires proof of facts which the other does not, the offenses are not the same and there is no double jeopardy. *State v. Sandoval*, 90 N.M. 260, 561 P.2d 1353 (Ct.App.1977). This approach to double jeopardy does not differ from the federal approach discussed in *Simpson v. United States*, supra.

 We have previously pointed out that robbery while armed with a deadly weapon may be committed without using a firearm. Since proof of the offense does not require proof that a firearm was used, it is not a violation of the double jeopardy clause to enhance the penalty when the offense is committed by using a firearm.

The firearm enhancement penalties were validly imposed. We are aware that a ruling of the Supreme Court denying a petition for a writ of mandamus may not be a decision on the merits of a particular legal issue when the Supreme Court does not explain its basis for denying the petition. See *State v. Reese*, 91 N.M. 76, 570 P.2d 614 (Ct.App.1977). Nevertheless, the result we have reached is consistent with the unreported Supreme Court decision in *State ex rel. Anaya v. Traub*, No. 12,059, decided August 2, 1978 in which the Supreme Court made permanent an alternative writ of mandamus. The Supreme Court commanded Judge Traub to "[c]omply with his mandatory, non-discretionary authority to impose the sentence for armed robery [sic] and firearm enhancement required by law". The result herein is also consistent with the unreported memorandum decision of this Court in *State v. Apodaca*, (Ct.App.) No. 3445, decided March 14, 1978. We held it was not fundamental error to impose the enhanced penalty for use of a firearm onto the sentence for armed robbery. The Supreme Court granted, but then quashed, its writ of certiorari in *State v. Apodaca*, supra.

The judgment and sentences are affirmed.

IT IS SO ORDERED.

HENDLEY and HERNANDEZ, JJ., concur.