829 P.2d 7

**NEW MEXICO STATE RACING
COMMISSION, Defendant–
Appellant,**

v.

**Jesse Lee YOAKUM, Plaintiff–Appellee.**

No. 12556.

Court of Appeals of New Mexico.

Dec. 31, 1991.

Certiorari Denied March 2, 1992.

Tom Udall, Atty. Gen. and Charles W. Kolberg, Asst. Atty. Gen., Santa Fe, for defendant-appellant.

Charles E. Hawthorne, Hawthorne & Hawthorne, P.A., Ruidoso, for plaintiff-appellee.

OPINION

BIVINS, Judge.

On a writ of certiorari to review the Respondent New Mexico State Racing Commission's (SRC) Ruling 571 suspending Petitioner Jesse Lee Yoakum's (trainer) license to participate in horse racing in New Mexico for five years, the District Court of Lincoln County adjudged the suspension void. The SRC appeals, challenging the district court's decision that trainer's procedural due process right to a prompt postsuspension hearing was violated. We reverse in part and remand.

A. BACKGROUND

On December 22, 1988, the SRC received a report from its appointed testing laboratory that a urine sample taken from a horse named "Follow the Fox," supervised by trainer, tested positive for 3–Hydroxy–N–Methylmorphinan, a metabolite of the potent synthetic morphine painkiller levorphanol. "Follow the Fox" finished first in the eleventh race at Ruidoso Downs on July 16, 1988.

On December 23, 1988, the SRC wrote trainer advising him of the laboratory results and informing him that the SRC would consider these results at its January 19, 1989, meeting. The letter informed trainer that a decision would be reached regarding future action, and advised train-

er: "Should you wish to be present or be represented by Legal Council [sic] at that time, please contact [the] investigator * * * as soon as possible." Trainer received that letter on December 30, 1988. He attended the January 19 SRC meeting without counsel. Trainer did not request an opportunity to respond at that meeting and was not invited to do so.

On January 25, 1989, the SRC sent trainer a copy of its Ruling 520, which summarily suspended trainer's license pending an informal hearing to be held within ten days if requested within that time. The letter forwarding the Ruling requested trainer to return his license, and advised trainer to contact the SRC if he had any questions. Trainer received that letter on February 3, 1989.

Before receiving the summary suspension, trainer wrote the SRC on January 31, 1989, requesting a hearing "at your next regular meeting." In that letter, trainer requested a stay of his suspension until he could be heard. On March 14, 1989, trainer's attorney entered his appearance before the SRC.[1] The letter accompanying the entry of appearance requested notice of any hearing dates. The letter made no request for a hearing date.

On March 15, 1989, the SRC gave notice to trainer that the evidence it had, if not rebutted or explained, constituted probable cause to suspend or revoke trainer's license. The notice explained the basis for probable cause and notified trainer of his right to a hearing pursuant to SRC Rule 43.57, which allows trainer to be represented by counsel, present evidence, and examine witnesses. The notice further advised trainer that because of the seriousness of the charges, the SRC urged trainer to obtain counsel. This notice, no doubt, crossed with trainer's attorney's letter forwarding his entry of appearance, mailed one day earlier.

On June 22, 1989, the SRC conducted a hearing with Dan Myers, a commissioner, acting as hearing officer for the SRC. On July 17, 1989, Mr. Myers filed his report to the SRC. The report contained proposed findings of fact and conclusions of law which determined probable cause to suspend trainer. Trainer and his attorney attended the hearing held on June 22, 1989, and presented evidence. Notice of that hearing had been given to trainer on June 14, 1989.

That hearing considered not only the laboratory tests for "Follow the Fox," but also for two other horses which tested positive for levorphanol. These horses ran in races on June 15, 1988, and August 27, 1988. The hearing also considered trainer's suspension by the State of Texas for 180 days which had expired on May 4, 1989.

On July 18, 1989, the SRC, at a regularly scheduled meeting, suspended trainer's license for five years. Trainer appealed the suspension by filing a petition for a writ of certiorari in the District Court of Lincoln County. The district court issued a preliminary injunction staying the suspension and later held the suspension void. The district court concluded that substantial evidence supported the suspension, and that the SRC's decision was not fraudulent, arbitrary or capricious. The sole basis for voiding the suspension, therefore, was denial of procedural due process. This appeal by the SRC followed.

B. DISCUSSION

1. Analysis of *Barry v. Barchi*

From the briefs, as well as the record, it appears the district court based its decision that trainer had been denied procedural due process on *Barry v. Barchi*, 443 U.S. 55, 99 S.Ct. 2642, 61 L.Ed.2d 365 (1979). In that case, the New York State Racing and Wagering Board (Board), which is empowered to license horse trainers, summarily suspended Barchi's license for fifteen days because a postrace test revealed a drug in the system of a horse he trained. *Id.* at 59, 99 S.Ct. at 2646. Under New York's racing regulations, when a postrace test of a horse reveals the presence of drugs, the

---

1. This fact is clear from the record, therefore we are not concerned with the district court's refusal to grant this requested finding.

Board will presume—subject to rebuttal—that the horse's trainer either administered the drug or the presence of drugs in the horse resulted from the trainer's negligence. *Id.* A New York statute provides that a suspended licensee is entitled to a post-suspension hearing, but the statute specifies no time in which the hearing must be held. *Id.* at 61, 99 S.Ct. at 2647. The statute ordains that a summary suspension is to remain in force pending the hearing and final determination. *Id.* at 60–61, 99 S.Ct. at 2647. The Board is given thirty days after the hearing to issue a final order. Without resorting to these statutory procedures, Barchi filed suit in federal district court challenging the constitutionality of the New York statute. *Id.* at 61, 99 S.Ct. at 2647.

The *Barchi* Court concluded that Barchi had a property interest in his license sufficient to invoke the protection of the Due Process Clause of the Fourteenth Amendment. *Id.* at 64, 99 S.Ct. at 2649; U.S. Const. amend. XIV, § 1. The Court then balanced the trainer's substantial interest in avoiding suspension with the State's important interest in assuring the integrity of racing carried on under its auspices. *Barchi*, 443 U.S. at 64, 99 S.Ct. at 2649. The Court said that:

> [T]he State is entitled to impose an interim suspension, pending a prompt judicial or administrative hearing that would definitely determine the issues, whenever it has satisfactorily established probable cause to believe that a horse has been drugged and that a trainer has been at least negligent in connection with the drugging.

*Id.*

The United States Supreme Court concluded that *prior* to the suspension of his license, Barchi received all the process that was due him. The Court determined the procedural statute did not affront the Due Process Clause by authorizing summary suspension without a pre-suspension hearing. *Id.* at 65, 99 S.Ct. at 2649. The Court concluded, nevertheless, that Barchi "was not assured a sufficiently timely postsuspension hearing and that [the statute] was

unconstitutionally applied in this respect." *Id.* at 64, 99 S.Ct. at 2649.

The Court held that because the consequences to a trainer of even a temporary suspension can be severe, the opportunity to be heard must be " 'at a meaningful time and in a meaningful manner.' " *Id.* at 66, 99 S.Ct. at 2650 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965)). The Court determined that the provision for an administrative hearing, neither on its face nor as applied, assured a prompt proceeding and disposition of the issues. Because the statute applied in that case was deficient in that respect, the Court determined Barchi's suspension was constitutionally infirm and voided the suspension. *Id.*

#### 2. Analysis

Although we agree with the district court regarding the suspension insofar as it was based upon the drugging of "Follow the Fox," we do so for a different reason. *Naranjo v. Paull*, 111 N.M. 165, 170, 803 P.2d 254, 259 (Ct.App.1990) (court will affirm if lower court is right for any reason). We disagree with the result reached by the district court with respect to the remaining two horses. We explain our reasoning, commencing with a discussion of the procedural events surrounding the drugging of "Follow the Fox."

#### a. "Follow the Fox" Incident

■ From our review of the record, including the SRC Rules which were admitted, as well as testimony given at the preliminary injunction hearing, it appears that the SRC Rules allow race-track stewards to suspend a trainer before a hearing upon receiving positive laboratory results showing that a horse which had raced has tested positive for illegal drugs. The procedure then allows the trainer to appeal that ruling to the SRC. Rule 43.53 provides in part that:

> In disciplinary matters in which a Board of Stewards has suspended a license * * * the Executive Secretary shall set the matter for hearing *as soon as is practicable* in conjunction with a regu-

larly scheduled meeting, unless a stay of the suspension * * * has been granted or unless otherwise agreed by the parties. [Emphasis added.]

The record indicates that because the stewards were no longer available at the track when the test results came in on "Follow the Fox," the matter was handled directly by the SRC. Therefore, in this case, unlike *Barchi*, there was no pre-hearing summary suspension. The SRC in effect sat as a board of stewards on January 19, 1989, when it determined that probable cause existed and issued its Ruling 520 temporarily suspending trainer's license.

SRC Ruling 520 temporarily and summarily suspended trainer's license "pending an informal hearing to be held within ten days if the request is made within ten days of this suspension." As we have already noted, trainer, within that ten days, did request a hearing at the SRC's next regular meeting. According to the testimony at the preliminary injunction hearing, the next meeting would have been in February.

■ It is generally held that a court will not declare a statute, or in this case, a rule, unconstitutional unless absolutely necessary. *See, e.g., State v. Ball,* 104 N.M. 176, 178, 718 P.2d 686, 688 (1986); *Garcia v. Village of Tijeras,* 108 N.M. 116, 118, 767 P.2d 355, 357 (Ct.App.), *cert. denied,* 107 N.M. 785, 765 P.2d 758 (1988). In other words, we analyze for constitutional infirmity only as a last resort. Regarding suspension based on the positive drug test on "Follow the Fox," we find it unnecessary to resolve the issue on constitutional grounds. As reasonably interpreted, SRC's own Rule 43.53 was not followed and, therefore, trainer's suspension based on the positive laboratory tests for "Follow the Fox" is void. *See Miller v. City of Albuquerque,* 89 N.M. 503, 507, 554 P.2d 665, 669 (1976) (failure to comply with its own regulations was fatal to Commission's decision); *State ex rel. Hughes v. City of Albuquerque,* 113 N.M. 209, 824 P.2d 349

(Ct.App.1991) (relief may be granted if procedures mandated by city ordinance were not followed even if such violation is not considered a denial of constitutional due process)[2]; *see also Vitarelli v. Seaton,* 359 U.S. 535, 539–40, 79 S.Ct. 968, 972–73, 3 L.Ed.2d 1012 (1959) (court found that agency was required to comply with internal regulations and that it was unnecessary to reach any constitutional issues). *See generally* 2 Am.Jur.2d *Administrative Law* § 350, at 162 (1962) ("Rules and regulations of an administrative agency governing proceedings before it, duly adopted and within the authority of the agency, are as binding as if they were statutes enacted by the legislature."); Kenneth C. Davis, 2 *Administrative Law* § 7.21 (1979); Note, *Violations by Agencies of Their Own Regulations,* 87 Harv.L.Rev. 629 (1974).

Rule 43.53, as we have noted above, requires a hearing "as soon as is practicable." Trainer requested a hearing within the meaning of that rule at the SRC's next regular meeting. He was not afforded that hearing at that time. The testimony indicates that the SRC scheduled a hearing for the April regular meeting but it was canceled for some unexplained reason. The representative of the SRC testified that at least four regular meetings occurred between the time the request was made and the time the hearing was held on June 22, 1989. We hold as a matter of law that this is an unreasonable delay, given the interest involved. We now turn to the suspension based upon the positive drug tests for the remaining horses.

### b. Incidents Involving Other Horses

■ While trainer was temporarily and summarily suspended under Ruling 520, the SRC became aware that trainer had been suspended by the State of Texas Racing Commission for a similar violation for a period of 180 days, with the suspension expiring on May 4, 1989. When this occurred the SRC retested samples from horses trainer had supervised in two other

---

**2.** Although *Miller* held that failure of an agency to follow its own procedures resulted in denial of procedural due process, we do not read that case as requiring disposition on constitutional grounds. *See Hughes,* 113 N.M. at 210, 824 P.2d at 350 (violation of law requiring certain procedures is not necessarily a due process violation).

races, one on June 15, 1988, and the other on August 27, 1988. Those samples tested positive for levorphanol. The SRC appointed one of its members, Mr. Dan Myers, to hold a hearing on June 22, 1989. Trainer was given notice on June 14, 1989, of that hearing and was advised by that notice that his suspension would be considered based on the three positive drug tests.

Mr. Myers conducted the hearing at which trainer and his attorney were present and afforded the opportunity to present evidence and to cross-examine witnesses. There is no claim by trainer that he was not afforded all due process rights at this hearing. Within thirty days of that hearing, as the SRC rules provide, the SRC, at a regular meeting, suspended trainer's license for five years by its Ruling 571.

■ With a full hearing having been held within eight days after notification setting forth the charges, we hold that the requirements of SRC Rule 43.53 that the hearing be held "as soon as is practicable" were satisfied. We also hold that the hearing, as well as the formal action taken by the SRC within thirty days after the hearing, satisfied the requirement of *Barchi* and that SRC Rule 43.53 was not unconstitutional as applied. Trainer concedes that he could not participate in racing in New Mexico from November 1988 through May 4, 1989, because of the Texas suspension. All that remains is to determine whether or not the rule on its face assured a sufficient-ly timely hearing to satisfy due process safeguards. We hold that it does. In *Barchi,* the New York statute specified no time in which the hearing must be held. SRC Rule 43.53 does. On that basis, we distinguish *Barchi* from the case before us. *See McCahey v. L.P. Investors,* 774 F.2d 543, 553 (2d Cir.1985) (suggesting that rules that do not contain mandatory time for hearing may pass due process muster if a procedure exists that allows claimant a hearing "without appreciable delay").

Because SRC Ruling 571 suspended trainer's license based in part upon the positive drug test on "Follow the Fox," which we hold void, the matter must be remanded to the SRC for reconsideration of the sanctions. Thus, we set aside the district court's judgment and remand for entry of a new judgment consistent with this opinion. The district court, in turn, should then remand the matter to the SRC for further proceedings consistent with the district court's revised judgment.

IT IS SO ORDERED.

APODACA and BLACK, JJ., concur.