865 P.2d 1209

**STATE of New Mexico, Plaintiff–Appellant,**

v.

**Richard FRANKLIN, Defendant–Appellee.**

**No. 14125.**

Court of Appeals of New Mexico.

Oct. 29, 1993.

Tom Udall, Atty. Gen., Anthony Tupler, Asst. Atty. Gen., Santa Fe, for plaintiff-appellant.

Roxanna M. Prelo, Prelo Law Firm, Albuquerque, for defendant-appellee.

## OPINION

APODACA, Judge.

The State appeals the trial court's dismissal of a firearm enhancement count contained in the criminal information charging Defendant with involuntary manslaughter by negligent use of a firearm. We hold that, because use of a firearm is one of the elements of the crime charged, *see Swafford v. State,* 112 N.M. 3, 16, 810 P.2d 1223, 1236 (1991), the trial court properly dismissed the firearm enhancement count. We thus affirm.

## BACKGROUND

This case arose out of a tragic game of "quick draw" between Defendant and Victim. Defendant was charged with involuntary manslaughter by negligent use of a firearm. *See* NMSA 1978, §§ 30–2–3(B), 30–7–4(A)(3) (Repl.Pamp.1984). Under the information, the State also sought to enhance any sentence imposed by one year, based on the alleged use of a firearm in the commission of the offense. *See* NMSA 1978, § 31–18–16(A) (Repl.Pamp.1990). Before trial, Defendant moved to dismiss the enhancement count, arguing that application of the firearm enhancement statute would violate the prohibition against double jeopardy under the federal and state constitutions. *See* U.S. Const. amend. V; N.M. Const. art. II, § 15. After a hearing, the trial court granted Defendant's motion and dismissed the firearm enhancement count. The State appealed.

## DISCUSSION

This Court has recognized that *Swafford* articulates a new, two-part test for determining whether a defendant has been subjected to double jeopardy in a single prosecution, and has applied the *Swafford* test when the firearm enhancement statute was involved. *State v. Charlton,* 115 N.M. 35, 39–41, 846 P.2d 341, 345–47 (Ct.App.1992), *cert. denied,* 114 N.M. 577, 844 P.2d 827 (1993); *State v. Elmquist,* 114 N.M. 551, 555, 844 P.2d 131, 135 (Ct.App.1992). In an effort to correctly apply the holding in *Swafford* to the facts of this case, we requested the parties to provide supplemental briefing to discuss the relevance of *Elmquist* to the facts of this appeal. The State concentrated its supplemental brief on the statutory analysis used in *Elmquist* to determine legislative intent on an issue unrelated to double jeopardy considerations. However, we consider the relevant discussion in *Elmquist* to be its recognition, and the State's concession in that case, that application of the firearm enhancement stat-

ute to a conviction for shooting into an occupied building, *see* NMSA 1978, § 30–3–8 (Cum.Supp.1991), violated double jeopardy principles under *Swafford*. *Elmquist*, 114 N.M. at 555, 844 P.2d at 135. The State admits in this appeal as well that *Swafford* is applicable. We thus proceed to apply the relevant test as enunciated in *Swafford*.

■ The double jeopardy clause of the fifth amendment " 'protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense.' " *Swafford*, 112 N.M. at 7, 810 P.2d at 1227 (footnotes omitted) (quoting *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969)). In this appeal, we are not confronted with multiple prosecutions for the same offense; rather, this is a case involving possible multiple punishments for the same offense. Consequently, the double jeopardy value implicated here is that of preventing the trial court from sentencing a defendant to greater punishment than the legislature intended. *Swafford*, 112 N.M. at 7, 810 P.2d at 1227 (citing *Grady v. Corbin*, 495 U.S. 508, 516–17, 110 S.Ct. 2084, 2090–91, 109 L.Ed.2d 548 (1990), *overruled on other grounds by United States v. Dixon*, 509 U.S. ——, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993)) (citing *Missouri v. Hunter*, 459 U.S. 359, 366, 103 S.Ct. 673, 678, 74 L.Ed.2d 535 (1983)). "[T]he sole limitation on multiple punishments is legislative intent." *Swafford*, 112 N.M. at 13, 810 P.2d at 1233.

■ Under *Swafford*'s two-part test for ascertaining the legislature's intent to punish, we first determine whether a defendant's conduct was "unitary, i.e., whether the same conduct violate[d] both statutes." *Id.* Although our Supreme Court did not state a judicial and all-encompassing definition for "unitary conduct," it nonetheless provided guidelines. The determination of whether a defendant's conduct is "unitary" requires consideration of the elements of the crimes charged and the facts presented at trial. *Id.*

Under the facts of this case, the criminal charge against Defendant was based on a single act, the negligent use of a firearm. The identical use of the same firearm formed the basis for the charge under the enhancement statute. Thus, we conclude this act was unitary conduct.

■ Because the first part of the test is answered affirmatively, we next proceed to the second part of the *Swafford* analysis, a determination of whether the legislature intended to impose multiple punishments for the unitary conduct. *Id.* at 14, 810 P.2d at 1234. In turn, the second part of the *Swafford* test has three components. First, "[i]f the legislature *expressly* provides for multiple punishments, the double jeopardy inquiry must cease." *Id.* (citing *Hunter*, 459 U.S. at 368–69, 103 S.Ct. at 679–80) (emphasis added). Second, if there is not a clear legislative intent, the court must apply the elements test stated in *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932), to determine whether one statute is subsumed within the other. *Swafford*, 112 N.M. at 14, 810 P.2d at 1234. Under the *Blockburger* test, when the same act violates two different statutes, the inquiry for determining if there are two offenses or only one is " 'whether each provision requires proof of a fact the other does not.' " *Swafford*, 112 N.M. at 8, 810 P.2d at 1228 (quoting *Blockburger*, 284 U.S. at 304, 52 S.Ct. at 182). This inquiry focuses on the elements of the statutes, not on the evidence and proof presented at trial. *Swafford*, 112 N.M. at 8, 810 P.2d at 1228. If the *Blockburger* test "establishes that one statute is subsumed within the other, the inquiry is over and the statutes are the same for double jeopardy purposes—punishment cannot be had for both." *Swafford*, 112 N.M. at 14, 810 P.2d at 1234.

■ Finally, under the third component, a conclusion that the elements of one statute are not subsumed within the other under *Blockburger* establishes only a rebuttable presumption that the statutes punish different offenses; only after applying the *Blockburger* elements test does the court finally

consider legislative intent using the traditional guidelines of "language, history, and subject of the statutes." *Swafford,* 112 N.M. at 14, 810 P.2d at 1234. In the absence of a clear indication that the legislature intended multiple punishment for the unitary conduct, the court should apply the rule of lenity to presume that the legislature did not intend multiple punishment. *Id.* at 15, 810 P.2d at 1235. Having previously determined that Defendant's conduct was unitary under the first part of the *Swafford* test, we proceed to apply the second part of the *Swafford* analysis to determine whether applying the firearm enhancement statute to the offense of manslaughter by negligent use of a firearm violates the prohibition against placing a defendant in double jeopardy.

■ We initially determine whether the legislature clearly expressed an intent to impose multiple punishments. The State contends that the legislature's mere enactment of the firearm enhancement statute indicates a legislative intent to enhance the penalty for *any* crime committed with a firearm. This Court has previously rejected similar reasoning. *See State v. Haddenham,* 110 N.M. 149, 153, 793 P.2d 279, 283 (Ct.App.) (rejecting argument that applying the sentencing provisions of the habitual criminal offender and felon in possession statutes does not offend double jeopardy because legislature intended to allow the same fact, the prior felony, to be used under both statutes), *cert. denied,* 110 N.M. 72, 792 P.2d 49 (1990). We are also unpersuaded by the State's argument here because our Supreme Court has held that, unless the legislature clearly intended otherwise, using an element of an offense to increase the penalty for the same offense violates double jeopardy. *Swafford,* 112 N.M. at 16, 810 P.2d at 1236.

In *Swafford,* the defendant had been convicted of both incest and criminal sexual penetration as a result of a single incident. *Id.* at 6, 810 P.2d at 1226. Our Supreme Court first considered whether double jeopardy prohibited the defendant from being convicted and sentenced for both crimes. *Id.* at 15,

810 P.2d at 1235. The Court applied the *Blockburger* and legislative intent portions of the analysis it had enunciated to determine that "there is no double jeopardy impediment to convicting and sentencing [the defendant] to consecutive terms for both incest and criminal sexual penetration arising out of the same act." *Id.* Thus, having determined that neither crime was subsumed within the other, our Supreme Court then considered the issue of whether, at sentencing, in addition to imposing a sentence for the defendant's *incest* conviction, the trial court properly used its broad discretion under NMSA 1978, Section 31–18–15.1 (Repl.Pamp.1990), to enhance the defendant's sentence for *criminal sexual penetration* on the basis that the victim was the defendant's half-sister. *Swafford,* 112 N.M. at 16, 810 P.2d at 1236. The Court held that this enhancement was error because the relationship between the defendant and the victim had already been considered by the legislature in setting the base sentence for the offense of incest, for which the defendant was already being punished, and the legislature had not specifically included the victim's relationship to the defendant as an aggravating factor justifying enhancing the penalty for criminal sexual penetration. *Id.* Thus, "[t]o permit consideration of that [relationship] element as an aggravating factor justifying an upward departure in sentencing for criminal sexual penetration would be repetitive of the punishment the legislature has established for the crime of incest." *Id.* *Swafford* thus disapproved using a required element of an offense twice in a sentencing proceeding—first, to establish the base sentence and, second, to aggravate or enhance the sentence— in the absence of an express legislative intent to so use that element.

If this principle discussed in *Swafford* prevents using a required element of one offense to aggravate the sentence for *another* offense resulting from the same conduct, it must necessarily prevent using a required element of an offense to enhance the sentence for that same offense, unless the legislature expressly indicates its intent to impose multiple punish-

ment. We fail to see a significant distinction between these two scenarios. Additionally, as previously stated, where the legislature's intent is not clearly stated, we are obligated to apply the rule of lenity. *Id.* at 15, 810 P.2d at 1235. For these reasons, we decline to hold that the mere enactment of the firearm enhancement statute evinces a clear legislative intent to enhance the penalty for all crimes that involve use of a firearm, even when use of a firearm is a necessary element of the offense. If anything, use of the word "firearm" in Section 30–7–4 indicates that the legislature has already considered firearm use as a factor in setting the base penalty for the offense. *See Swafford,* 112 N.M. at 16, 810 P.2d at 1236 ("[T]he elements of the offense are ipso facto incorporated by the legislature into the base level sentencing for the offense.").

Second, because we determine that there is no explicit legislative intent to impose the firearm enhancement to the crime of involuntary manslaughter by negligent use of a firearm, we apply the *Blockburger* test to determine whether the elements of the firearm enhancement statute are subsumed within the elements of involuntary manslaughter by negligent use of a firearm. To apply the *Blockburger* test, we must first determine what are the "elements" of the firearm enhancement statute. We have previously recognized that, even though Section 31–18–16(A) "does not have 'elements' per se," *Charlton,* 115 N.M. at 40, 846 P.2d at 346, it can nonetheless be analyzed as though it did because it does have certain requirements. *Id. Charlton* correctly spelled out the law enunciated in *Swafford* under that case's two-part test, and it applied the law to the facts of that case. Nonetheless, we recognize that we have taken a different approach in analyzing the "elements" of the firearm enhancement statute. *See generally* Taylor Mattis, *Precedential Value of Decisions of the Court of Appeals of the State of New Mexico,* 22 N.M.L.Rev. 535 (1992); Taylor Mattis, *Stare Decisis within Michigan's Court of Appeals: Precedential Effect of its Decisions on the Court Itself and on Michi-*

gan Trial Courts, 37 Wayne L.Rev. 265 (1991). We note, however, that the holding in *Charlton* would remain the same under our analysis.

The term "element" of a crime or a defense has been defined as "constituent part." *State v. Duncan,* 111 N.M. 354, 355, 805 P.2d 621, 622 (1991); *Smith v. State,* 89 N.M. 770, 774, 558 P.2d 39, 43 (1976). Determining the elements of an offense begins with analyzing the statutory language. *See Smith,* 89 N.M. at 774, 558 P.2d at 43. The elements of an offense are those facts the prosecution must prove beyond a reasonable doubt to establish that the defendant committed the offense. *See State v. Ungarten,* 115 N.M. 607, 609, 856 P.2d 569, 571 (Ct.App. 1993). Section 31–18–16(A), the firearm enhancement statute, applies "[w]hen a separate finding of fact ... shows that a firearm was used in the commission of a noncapital felony." As we read the firearm enhancement statute, the essential fact of a defendant's conduct that must be proved before enhancement is proper is that a firearm was used. *Id.; see also State v. Kendall,* 90 N.M. 236, 242–43, 561 P.2d 935, 941–42 (Ct.App.) (construing former statute), *rev'd in part,* 90 N.M. 191, 561 P.2d 464 (1977). The fact that the defendant has been convicted of a noncapital felony is simply the condition or prerequisite of the sentencing enhancement. *See* NMSA 1978, § 31–18–13(A) (Repl.Pamp. 1990) (stating that all persons convicted of a crime shall be sentenced).

The elements of involuntary manslaughter as applied to this case require the killing of a human being "in the commission of an unlawful act not amounting to [a] felony." Section 30–2–3(B). The particular unlawful act alleged in this case was the negligent use of a firearm. Section 30–7–4(A)(3). Involuntary manslaughter is a fourth degree felony. Section 30–2–3(B). Thus, under the facts of this case, the State was required to prove that Defendant negligently used a firearm to commit a noncapital felony and this conduct resulted in the death of a human being. Use of a firearm is the same conduct required to

enhance Defendant's sentence under Section 31–18–16(A). Because the State would not be required to prove any additional facts in order to have Defendant's sentence enhanced, we conclude that the firearm enhancement statute is subsumed within the offense of involuntary manslaughter by negligent use of a firearm. *Cf. Haddenham*, 110 N.M. at 154, 793 P.2d at 284 ("[I]t is impermissible to sentence both defendants as habitual offenders when the same facts [same prior convictions] were relied upon to convict defendants of the underlying offense of felon in possession of a firearm."). As a result, "the inquiry is over and the statutes are the same for double jeopardy purposes—punishment cannot be had for both." *Swafford*, 112 N.M. at 14, 810 P.2d at 1234. We thus do not continue with the second part of the *Swafford* analysis by applying other indicia of legislative intent, the third step of this part of the *Swafford* test. *Id.* We hold that the trial court correctly dismissed the firearm enhancement count in the information.

We do, however, address the State's arguments to the contrary. Pointing to the language of Section 30–7–4(A)(3), which refers to "handling or using a firearm *or other deadly weapon*" (emphasis added), the State contends that the crime of negligent use of a deadly weapon does not necessarily require the specific use of a firearm. Thus, the State argues, under the reasoning of *State v. Gonzales*, 95 N.M. 636, 638–39, 624 P.2d 1033, 1035–36 (Ct.App.), *overruled on other grounds by Buzbee v. Donnelly*, 96 N.M. 692, 634 P.2d 1244 (1981), and *State v. Gabaldon*, 92 N.M. 230, 234–35, 585 P.2d 1352, 1356–57 (Ct.App.), *cert. denied*, 92 N.M. 260, 586 P.2d 1089 (1978), applying the firearm enhancement statute to the facts of this case does not violate double jeopardy principles.

In *Gabaldon*, this Court held that applying the firearm enhancement to a conviction for robbery with a deadly weapon, where the deadly weapon used was a firearm, did not violate double jeopardy. *Id.* at 235, 585 P.2d at 1357. Our rationale was that robbery with a deadly weapon could be committed without using a firearm, such as by using a knife or

brass knuckles. *Id.* at 234, 585 P.2d at 1356. Therefore, we concluded that, "[s]ince proof of the offense does not require proof that a firearm was used, it is not a violation of the double jeopardy clause to enhance the penalty when the offense is committed by using a firearm." *Id.* at 235, 585 P.2d at 1357. *Gonzales* adopted the reasoning of *Gabaldon* to hold that double jeopardy did not prohibit applying the firearm enhancement statute to increase the penalty for aggravated battery with a deadly weapon. *Gonzales*, 95 N.M. at 638–39, 624 P.2d at 1035–36. However, unlike the statutes at issue in those cases, NMSA 1978, Section 30–3–5(C) (Repl. Pamp.1984) (aggravated battery with a deadly weapon), and NMSA 1978, Section 30–16–2 (Repl.Pamp.1984) (robbery with a deadly weapon), the statute defining negligent use of a deadly weapon, Section 30–7–4, specifically refers to use of a firearm in each subsection.

■ We recognize that the particular subsection Defendant is charged with violating, Section 30–7–4(A)(3), refers to "firearm or other deadly weapon" and on that basis differs from the other subsections of the statute, which expressly limit their application to a firearm. However, this language does not make the statute here "identical" to the statutes at issue in *Gonzales* and *Gabaldon*. When a criminal statute is written in the alternative, it creates separate offenses for each alternative that are treated separately for double jeopardy purposes. *State v. Rodriguez*, 113 N.M. 767, 771, 833 P.2d 244, 248 (Ct.App.), *cert. denied*, 113 N.M. 636, 830 P.2d 553 (1992); *see also Swafford*, 112 N.M. at 8–9, n.4, 810 P.2d at 1228–29 n. 4. Because Section 30–7–4(A)(3) provides alternative means for prosecuting the offense of endangering another by negligent use of a deadly weapon, it in effect creates two criminal offenses, negligent use of a firearm and negligent use of an "other deadly weapon," which we analyze separately. For these reasons, we reject the State's argument that *Gabaldon* and *Gonzales* are dispositive of the issue raised in this appeal.

CONCLUSION

Because we hold that Section 31–18–16(A), the firearm enhancement statute, is sub-

sumed within the crime of involuntary manslaughter by negligent use of a firearm, *see* Sections 30–2–3(B) & 30–7–4(A)(3), we conclude that the trial court correctly dismissed the firearm enhancement count from the information. We thus affirm the trial court's decision and remand for further proceedings in accordance with this opinion.

IT IS SO ORDERED.

CHAVEZ, J., concurs.

BIVINS, J., specially concurring.

BIVINS, Judge, specially concurring.

Although I agree with the majority that the trial court's dismissal of the firearm enhancement should be affirmed, I take a different path in arriving at that conclusion. The majority relies on the two-part test announced in *Swafford v. State,* 112 N.M. 3, 13, 810 P.2d 1223, 1233 (1991); I would employ statutory construction only.

The question posed in this appeal is whether the legislature intended the firearm enhancement statute to apply in a case such as the one before us. According to the briefs, two friends, while watching Super Bowl football on television on January 26, 1992, engaged in a "quick-draw" game which resulted in the tragic death of the victim and with Defendant being charged with involuntary manslaughter.

Under NMSA 1978, Section 30–2–3(B) (Repl.Pamp.1984), "[i]nvoluntary manslaughter consists of manslaughter committed in the commission of an unlawful act not amounting to felony." The "unlawful act not amounting to felony" relied on by the State in this case is the negligent use of a deadly weapon. Specifically, the State relies on NMSA 1978, Section 30–7–4(A)(3) (Repl. Pamp.1984), which provides "[n]egligent use of a deadly weapon consists of: endangering the safety of another by handling or using a firearm or other deadly weapon in a negligent manner." Involuntary manslaughter is a fourth degree felony; negligent use of a deadly weapon is a petty misdemeanor. *See id.;* Section 30–2–3(B).

In the criminal information, the State included firearm enhancement under NMSA 1978, Section 31–18–16 (Repl.Pamp.1990). The portion of that statute relevant to this appeal provides:

A. When a separate finding of fact by the court or jury shows that a firearm was used in the *commission of a noncapital felony,* the basic sentence of imprisonment ... shall be increased by one year, and the sentence imposed by this subsection shall be the first year served and shall not be suspended or deferred. (Emphasis added.)

Under this statute, the one-year additional imprisonment is not only mandatory, it cannot be suspended or deferred by the trial court. Did the legislature intend this result to apply to an unintentional killing resulting from noncriminal negligence?

In construing a statute, it is fundamental that we must ascertain and give effect to the intention of the legislature. *See State v. Chavez,* 77 N.M. 79, 82, 419 P.2d 456, 457 (1966). Where there is no clearly express legislative intent, the words used are to be given their usual and ordinary meaning. *See Tafoya v. New Mexico State Police Bd.,* 81 N.M. 710, 714, 472 P.2d 973, 977 (1970).

On first reading, the language in Section 31–18–16(A) providing for enhancement when a separate finding of fact shows "that a firearm was used in a commission of a noncapital felony" can be read as all encompassing. In fact, this Court recently reiterated that the legislature intended to apply the firearm enhancement statute to " 'any felony[,] other than a capital felony.' " *State v. Charlton,* 115 N.M. 35, 40, 846 P.2d 341, 346 (Ct.App. 1992) (emphasis deleted), *cert. denied,* 114 N.M. 577, 844 P.2d 827 (1993) (quoting from *State v. Gabaldon,* 92 N.M. 230, 234, 585 P.2d 1352, 1356 (Ct.App.), *cert. denied,* 92 N.M. 260, 586 P.2d 1089 (1978)). Certainly, given the language used, coupled with those statements, one could forcefully argue, as does the State, that the legislature intended the firearm enhancement to apply to the case before us. I believe, however, that on closer exami-

nation, a different conclusion should be reached.

"Manslaughter is the unlawful killing of a human being without malice." Section 30-2-3. There are two kinds of manslaughter: voluntary and involuntary. *Id.* The latter, as set forth above, consists of manslaughter committed in the commission of an unlawful act not amounting to a felony. Section 30-2-3(B). Here, that unlawful act was a negligent handling of a firearm. *See* § 30-7-4(A)(3). While the word "commission" is used both in the involuntary manslaughter and the firearm enhancement statutes, in my opinion, they each have different connotations. In the involuntary manslaughter statute, commission does not contemplate a deliberate, intentional act, whereas, in the firearm enhancement statute, it does. I reach this conclusion for the following reasons.

Involuntary manslaughter has been held to include only unintentional killings. *See State v. King,* 90 N.M. 377, 380, 563 P.2d 1170, 1173 (Ct.App.1977), *overruled on other grounds by State v. Reynolds,* 98 N.M. 527, 650 P.2d 811 (1982). In addition, where negligent use of a deadly weapon is the basis for involuntary manslaughter, a showing of only ordinary civil negligence is required. *See Santillanes v. State,* 115 N.M. 215, 222, 849 P.2d 358, 365 (1993). Therefore, there is no requirement that Defendant first knew or should have known of the danger involved and then acted with a reckless disregard for the safety of another. *See id.* I would therefore make a distinction between the use of a firearm in those cases which include either intentional acts or criminal negligence, on the one hand, and those which are unintentional or based on ordinary civil negligence, on the other.

This reading of the firearm enhancement statute, I believe, comports with the type of situation in which its application has been upheld. For example, in *Gabaldon,* 92 N.M. at 231, 585 P.2d at 1353, the defendant was convicted of three robberies while armed with a deadly weapon. In that case, the deadly weapon was a firearm, and the defen-

dant's sentence was enhanced as a result of the use of a firearm. *Id.* at 234, 585 P.2d at 1356. In *Gabaldon,* this Court said "[t]he legislative policy is that any felony, other than a capital felony, committed by use of a firearm, should be more severely punished than felonies committed without using a firearm." *Id.* For example, when one sets out to commit armed robbery with the firearm, few would seriously question that the statute serves notice that that person will be more severely punished as a result. Similarly, when one resorts to the use of a firearm in committing aggravated battery, that person is on notice that he will be more severely punished. *See State v. Gonzales,* 95 N.M. 636, 638–39, 624 P.2d 1033, 1035–36 (Ct. App.), *overruled on other grounds by Buzbee v. Donnelly,* 96 N.M. 692, 634 P.2d 1244 (1981); *see also Charlton,* 115 N.M. at 40, 846 P.2d at 347 (firearm enhancement upheld against double jeopardy attack where firearm used in the commission of aggravated assault).

That severity should not, however, apply when, as in this case, Defendant did not set out to commit a crime and he has not been charged with doing so. This is an unintentional accidental killing which, had it not resulted in a death, would have amounted to no more than a petty misdemeanor. Surely, the same societal concerns involved with the use of a firearm in the commission of nonfelony crimes intentionally committed or committed with criminal negligence would not apply to a case such as the one before us.

Additionally, to apply the firearm enhancement statute in this case, as the State urges, would bring about absurd results. *See State v. Herrera,* 86 N.M. 224, 226, 522 P.2d 76, 78 (1974) (appellate courts will not construe statutes to achieve an absurd result). It is easy to visualize a tragic death occurring during a hunting accident due to the negligent handling of a firearm. If we were to adopt the State's argument, even the most law-abiding citizen would be subjected to the mandatory one-year imprisonment. This interpretation would give the trial court absolutely no choice in the matter of sentencing.

574

For example, if Defendant in this case were convicted of involuntary manslaughter, the trial court could impose jail time; however, if we were to hold the firearm enhancement statute applicable, the trial court would have no choice but to impose the one-year jail time.

At the outset, I indicated that I did not think the two-part *Swafford* test was necessary. I reached that conclusion based upon my reading of that case. The defendant in *Swafford* was convicted of one count of third-degree criminal sexual penetration, one count of incest, one count of aggravated assault with intent to commit felony, and one count of false imprisonment. 112 N.M. at 6, 810 P.2d at 1226. On appeal, the defendant in *Swafford* contended that separate, consecutive sentences for third degree criminal sexual penetration and incest violated the double jeopardy protection against multiple punishments for the same offense. *Id.* at 7, 810 P.2d at 1227. It was in regard to that contention that our Supreme Court set forth the two-part test utilized by the majority. Additionally, the defendant in *Swafford* claimed error by the trial court in aggravating his sentences based on his blood relationship to the victim. *Id.* at 6, 810 P.2d at 1226. In dealing with the latter issue, I read *Swafford* to apply only a statutory construction analysis, rather than the two-part test applied to the multiple punishment issue. In my opinion, the case before us requires no more than what the Supreme Court did with the aggravation question which is similar to the enhancement issue presented here. Usually, a court should not resort to constitutional scrutiny when an issue can be otherwise resolved. *See New Mexico State Racing Comm'n v. Yoakum,* 113 N.M. 561, 564, 829 P.2d 7, 10 (Ct.App.1991), *cert. denied,* 113 N.M. 352, 826 P.2d 573 (1992); *State v. Ball,* 104 N.M. 176, 178, 718 P.2d 686, 688 (1986); *In re Bunnell,* 100 N.M. 242, 244, 668 P.2d 1119, 1121 (Ct. App.1983).

I join with the majority in affirming dismissal of the firearm enhancement component of the charge but do so for the reasons stated above.